PRATHER *vs.* THE RICHMOND & DANVILLE RAILROAD CO.

1. Where the deceased, for whose homicide his wife brought suit, was upon a construction train which was used for the purpose of hauling dirt, rails, etc. necessary for repairing the road-bed, and it had a crew of a number of hands constantly employed, of whom deceased was one, his business being to do anything to insure the successful working of the train, he was a co-employé with the balance of the crew, including the conductor or boss of the squad and the engineer and fireman of the engine, although at the time of the accident, the train was moving from one point to another, and deceased had no active duty to perform. *Richmond and Danville R. Co. vs. Ayers*, 53 *Ga.* 12, cited, doubted and distinguished.

2. If the deceased immediately or remotely, directly or indirectly, caused the injury or any part of it or contributed to it at all, his wife could not recover.

3. It was not error to charge that the burden was on the plaintiff to show that her husband was without fault or that the defendant was in fault.

4. It was not error to charge that, if an employé received an injury from an accident which is an ordinary peril of the service undertaken by him, he cannot recover damages for such injury.

5. Before an employé can recover from a railroad company, he must be free from fault; and if he is killed while in disobedience of a rule of the company, or an order of the conductor given him while he is under the command of that officer, his widow cannot recover,

unless it appear that such disobedience did not, directly or indirectly, contribute in any degree to the injury.

(a) If the employé disobey a reasonable rule of the company, or a reasonable order of the person who is in command of the squad of whom he is one, given either for the protection of the interest of the company or of the employé himself, the burden is upon the plaintiff to show that the disobedience did not contribute to the injury.

6. If it be shown that the employé has disobeyed the order of his superior, the burden is upon him to show that such disobedience did not contribute in any degree to the injury.

7. It was the right and duty of the conductor in charge of the train and representing the company to give all necessary orders for the protection of the interest of the company and the safety of its servants; and if he gave an order not to sit with legs hanging over the side of the car, and it was a reasonable order, and the servant disobeyed it and was injured, he could not afterwards say it was not an order but simply advice or warning against danger; nor could he say that, while he was riding from one point on the road to another, and had nothing to do with the running of the train, it was not such an order as he was bound to obey.

8. Even if there were errors in the charge, a new trial will not be granted, as it appears that the injury was the result of an unavoidable occurrence which could not have been prevented by the exercise of even extraordinary diligence.

9. Some of the newly-discovered testimony is cumulative in its character, and the remainder of it negative, relating principally to whether any orders were given by the conductor as to standing up or sitting down.

July 11, 1888.

Railroads. Fellow-servants. Negligence. Charge of court. Evidence. Before Judge VAN EPPS. City court of Atlanta. December term, 1886.

The following is added as supplemental to the report contained in the decision:

The plaintiff's husband was one of a gang employed on defendant's material train, to load and unload the cars. This train was used to haul rails, cross-ties, sand and other materials up and down the road to keep the track in repair, working on the track between the schedules of the regular trains, and having work to do and materials to deliver at

different points. It was customary and necessary for it to run backwards and forwards; similar trains on all roads do this. On the day the plaintiff's husband was killed, the train was working near the 33d mile post, hauling steel rails. It had run into Suwanee where the balance of the train was, to let the hands get dinner and to keep off the main line at that hour, and about one o'clock the engine and one flat-car loaded with six steel rails and 18 hands were returning up the road to deliver these rails, the engine pushing the car, when at an unused settlement crossing, two cows crossed the track one shortly after the other. The car struck the second cow, was thrown off the track and tilted; the men riding on it and the steel rails were thrown off, and several, among them plaintiff's husband, killed and wounded. These men had nothing to do with the running of the train, and no work to do until the train should reach a certain point and stop. The plaintiff contended that her husband occupied, under the circumstances, a relation in some respects like that of a passenger; and that the orders of the conductor to the hands had reference simply to their safety, and not to any duty which they were required to perform; and therefore the rule of diligence requiring an employé to be free from fault, was not applicable.

The grounds of the motion for new trial referred to in the 4th, 6th and 7th divisions of the decision are as follows:

(5) The court erred in charging the jury that, where an employment is attended with danger, the servant assumes the hazard of ordinary perils which are incident to it; and if he receives an injury from an accident which is an ordinary peril of the service undertaken by him, he cannot recover damages for such injury.

(7) The court erred in charging as follows: " If the evidence shows you that the plaintiff was at fault, that he was at the time disobeying the orders of the conductor, and it is not clearly shown to you that such disobedience

did not contribute in any degree to the injury, then there can be no recovery."

(8) The court, whenever referring to the conduct of the deceased, stressed and emphasized what might constitute fault of his part, e. g. " Did his disobedience to the order contribute in any, the slightest degree, to occasion the injury complained of?"

(9) The court refused to charge that if the deceased was riding upon the train from the place where he had eaten his dinner, and was going ·to the place where he was to work, and had no connection with the running of the train between the two points, the right of his wife to recover damages for his life is affected by negligence on his part, as it would be in ordinary cases sustaining no relation to the road as employé.—The court stated that he refused this charge because it assumed a state of facts not proved; the deceased representing the physical force, and the rails the material appliances, employed in the work of construction, and he being thus connected with the train, and being required to assist in unloading the rails at the proper point.

(10)–(11) The court refused to charge that an instruction by a conductor to an employé looking solely to the protection of the employé while riding upon a car, and to apply to the time when the employé has no connection with the work being done, might, if the facts justify the conclusion, be ·considered simply as advice or warning against danger, and might be considered in determining whether deceased was negligent, but it would still be left to the jury to say, in view of all the testimony, whether the employé was guilty of negligence; and such an order was not one which the law required the employé to obey.

On the trial, the conductor testified that he had always told the men to stand up when the car was running, and had cautioned them about sitting on the side of the car, and did not allow them to sit and hang their feet down. The engineer and another employé testified that they had

heard the conductor tell the men these things.   The newly-discovered evidence which was the basis of one of the grounds for new trial, consisted of three affidavits from former employés to the effect that they had never heard the conductor give an order to stand up when the car was running, and that it was the custom of the hands to sit with their legs hanging from the side of the car.   There were other affidavits as to this custom, and as to the men having been often seen sitting in that position.   A number of affidavits were presented by the defendant in rebuttal.

HOKE & BURTON SMITH, for plaintiff.

HOPKINS & GLENN, for defendant.

SIMMONS, Justice.

This case comes here on a writ of error sued out by the plaintiff, because she alleges that the court below erred in refusing her a new trial.   There are twelve grounds taken in the motion.   The first two were not insisted on before us, the counsel admitting that if the court had committed no error, there was sufficient evidence to sustain the verdict.   It therefore becomes necessary for us to examine the alleged errors of law, and determine from them whether the plaintiff in error is entitled to a new trial or not.   We begin with the third ground of the motion, which is:

(3) Because the court erred in charging the jury as follows:   "If this was a construction train engaged in the business of carrying laborers' material to be used by them from one point on the road to another, and one or more of the same class of laborers in which the plaintiff's husband was, and selected indifferently from their number, now one and then another was charged with the duty of manning the brakes of the flat-car, and keeping a lookout and giving signals of danger ahead, then the plaintiff's hus-

band was a co-employé with such other laborers and with the conductor or boss of the squad and the engineer and fireman of the engine, and engaged in the same manner with them; and in order for the plaintiff to recover on this state of facts, it must appear that Wesley Prather was wholly blameless, that is, that he himself was guilty of no negligence which contributed to the cause of the injury. If he immediately or remotely, directly or indirectly, caused it or any part of it, or contributed to it at all, then his wife cannot recover." It is objected to this charge, first, that the court in the charge placed the deceased, when riding on the flat-car, as an employé engaged about the work, although at the time he had nothing to do with the movement of the train; and which required him to be blameless before he could recover.

1. We think the charge was correct. The character of this train and the nature of the deceased's employment must be borne in mind. This was a construction train, used for the purpose of hauling steel rails, dirt and anything else that was necessary for repairing the road-bed. The evidence shows that this train would have been useless without hands to load and unload it; that it had a crew of from eighteen to twenty-six constantly employed; that Prather, the deceased, was one of this crew, and his business was to do anything to insure the successful working of the train. The train equipped for its work consisted in the locomotive, the steam power, the cars, and the physical force, of which latter the deceased represented a part. He belonged to this train, and we think was an employé on it, and co-employé with the balance of the crew, although at the time of the accident he had no active duty to perform. The fact that he had no active duty to perform while riding from one point of work to another, did not make him any the less an employé during those times. He could not be an employé whilst at work at one mile-post, and having finished there get on the car to go to the next mile-post, and while riding the mile

become a passenger, and at the end of the mile become an employé again. " The true test of fellow-service is community in that which is the test of service,—which is, subjection to control and direction by the same common master in the same common pursuit. . . . ' In order to constitute fellow-laborers, . . . . it is not necessary that the servant causing and the servant sustaining the injury shall both be engaged in precisely the same, or even in similar acts. Thus, the driver and guard of a stage-coach, the steersman and rowers of a boat, the man who draws the red-hot iron from the forge and those who hammer it into shape, the engineman and the switcher, the man who lets the miners down into and afterwards brings them up from the mine, and the miners themselves,—all these are fellow-laborers . . . within the meaning of the term.' " 3 Wood's Railway Law, §388, and authorities there cited.

It will be seen, by reference to the plaintiff's declaration, that she calls him an employé or " train hand." It must be borne in mind also that this train was not a freight or passenger train, but a gravel or construction train, used by the defendant as such, and not used as common carrier of goods or passengers.

It is argued that this case is covered by the case of *Richmond & Danville R. R. Co. vs. Ayers,* 53 *Ga.* 12. We do not think so. If that case was ruled correctly (of which I have grave doubts), it does not conflict with our ruling in this case. The facts are entirely different. In that case, Ayers did not belong to that train as Prather did to this. He was a " track-raiser," a separate and independent employment from that of a train-hand, who is a part of the crew of the train.

2. The second criticism made upon this part of the charge is, that the use of the words, " immediately or remotely," etc. was argumentative, and calculated to mislead the jury. We do not think that this was error. It was simply a definition of the words " without fault," used by our code. Besides, it is in the very language used by

this court in *Mitchell vs. Central R. R.*, 63 *Ga.* 173, when construing section 3036 and defining the meaning of these words, and is not inconsistent with what has been ruled in other cases, that the contributory negligence of the employé must be substantial.

3. Exception is made in the fourth ground of the motion to the charge, because the court charged the jury that " the burden is on the plaintiff to show that her husband was without fault, or that the defendant was in fault." This rule has been so long settled by this court, that we do not think it necessary to devote any time to show the correctness of it.

4. In the 5th ground of the motion, the plaintiff in error complains of and criticises the use of the words "ordinary perils," because the jury might infer from it that if accidents frequently happened they were therefore ordinary perils, and no recovery could be had, though the other employés were negligent. We do not think that any such inference could be drawn from the language used. Taken in connection with the charge upon the question of negligence, it is a sound proposition in law. The only adverse criticism we can make upon the charge as given, is the use of the word ordinary. Why confine it to the word ordinary? Does not the employé assume the risk of all perils incident to his employment,—necessary, ordinary and extraordinary, except the negligence of the company, its servants and agents?

5. The 6th ground of the motion complains of the following charge of the court: " The jury is instructed that the law is, that before an employé can recover, he must be free from fault, and if an employé is killed while in disobedience of a rule of the company, or an order of his conductor, given him while he was under the command of the conductor, his widow cannot recover for his homicide, unless it clearly appear from the evidence that such disobedience did not directly or indirectly contribute in any degree to the injury. The burden is upon the plaintiff to

show that he did not thus contribute; and if she has failed to do this, it will be your duty to return a verdict for the defendant."

We see no error in this charge, taken in connection with the entire charge upon the same subject. It is certainly a sound proposition, under the decisions of this court, that before an employé can recover from a railroad company, he must be free from fault; and we think it follows that if he is killed while in disobedience of a rule of the company, or an order of his conductor, given him while he is under the command of the conductor, his widow cannot recover for his homicide, unless it appear from the evidence that such disobedience did not directly or indirectly contribute in any degree to the injury. The employé is bound to obey all reasonable rules and regulations of the company, and all reasonable orders of the person who is in command of the squad, given either for the protection of the interests of the company or the protection of the employé himself. If he disobeys these rules or orders, the burden is upon the plaintiff to show that the disobedience did not contribute to the injury. The court charged, in substance, that if this employé, the plaintiff's husband, would have been killed whether standing or sitting with his legs hanging over the car, or not, his disobedience to the order of his superior would not bar the plaintiff's recovery. And the court also charged that if the conductor had given such orders, yet if they were in the habit of riding that way, with the knowledge of the conductor, then a failure to comply with the order would not bar the plaintiff's recovery. Taking the whole charge upon this subject together, we think it was a fair and impartial presentation of the law to the jury.

6. There was no error in charging the jury as complained of in the 7th ground of the motion. We think the rule is well-established that, if it is shown that the employé has disobeyed the orders of his superior, the burden is upon him to show that such disobedience did not

contribute in any degree to the injury. *Central Railroad vs. Mitchell*, 63 *Ga.* 174; *Atlanta & Charlotte Air-Line Railway vs. Ray*, 70 *Ga.* 674.

There was no error in the charge complained of in the 8th ground of the motion. The 9th ground has been considered in passing upon the 3d ground, and what has been said in reference to the former will apply to this ground.

7. Nor do we see any error in refusing to charge as set out in the 10th and 11th grounds. The conductor was in charge of the train. It was an independent train. He represented the company. It was his right and duty to give all necessary orders for the protection of the interests of the company and the safety of its servants. If he gave the order not to sit with the legs hanging over the side of the car, and it was a reasonable order, the servant must obey it. If he disobeyed it and was injured, he could not afterwards say it was not an order, but simply " advice or warning " against danger. Nor could he say, that while he was " riding from one point on the road to another and had nothing to do with the running of the train, it was not such an order as he was bound to obey." The servant is bound to obey all reasonable rules and orders given him by his superior in and about the business of his employment. We have shown in the former part of this opinion that Prather was an employé at the time of the disaster. If he was, and this was a proper order for the protection of the interests of the company, or even for his own safety as such employé, he was bound to obey it. If he disobeyed it and was injured, he must show to the satisfaction of the jury that his disobedience did not contribute to his injury. Nor would it have been proper for the court to have instructed the jury that it was not such an order as required him to obey. The court very properly, in his able, lucid and impartial charge, left these and kindred questions to the jury, where they properly belong.

8. Admitting, for the sake of argument, that there are errors in the charge, still we would not feel authorized to

reverse the judgment of the court below in this case.   We have read the evidence closely and carefully, and have come to the conclusion that the verdict is right, and that the jury were compelled by the evidence to find this verdict.   Whether the husband of this plaintiff was standing or sitting, or had his legs hanging over the side of the car or not, in our opinion it would make no difference in the result.   It appears to us, from the evidence, that this was an unavoidable occurrence which could not have been prevented by the exercise even of extraordinary diligence.   A large preponderance of the evidence clearly shows that there were two cows near the track; that this engine and train were in a deep cut; that when the first cow was seen, the brakes were applied and the speed of the train was decreased to about six miles an hour; that after the first cow had crossed the track, a second cow suddenly jumped on the track just as the forward car reached the crossing; it was not seen, and could not have been seen, by any one until it started across the track; it was impossible to stop the train after the second cow was seen or could have been seen; the forward car struck it and was derailed, resulting in the death of the plaintiff's husband.   From this it will be seen that the railroad company is not chargeable with fault or negligence; and therefore, whether the plaintiff's husband was at fault or not, she is not entitled to recover.

9. Under the view we take of this case, it is unnecessary to discuss the 12th ground, in regard to newly-discovered testimony, further than to say that some of the testimony is cumulative in its character, and the remainder of it negative, relating principally to whether any orders were given by the conductor in regard to standing up or sitting down with the legs hanging over the side of the car.

Judgment affirmed.