SPENCER *et al.*, receivers, *v.* BROOKS, by next friend.

1. A written contract of service between one of its employees and a railroad company which, after the making of such contract, is put into the hands of receivers who retain this employee in their service, is not necessarily and at all events binding between the receivers and the employee. To make it so there must be, as between these parties, some agreement to this effect, either express or implied.
2. As a general rule a conductor in charge of a regular passenger or freight-train and having, as such conductor, full control of its movements, is not, while in the performance of his usual and ordinary duties with reference thereto, a fellow-servant of an engineer, fireman or brakeman working under his orders. Under such circumstances the conductor is the vice-principal of the railroad company or of receivers operating it under the orders of a court.
3. There is nothing in the facts of this case taking it out of the rule above stated, and the charges complained of being, under the evidence, adjusted to this rule, were not improperly based upon the assumption that the plaintiff and the conductor were not fellow-servants; nor were they in other respects erroneous.
4. The evidence warranted the verdict, and there was no error in denying a new trial.

January 27, 1896.

Action for damages.　　Before Judge Van Epps.　　City court of Atlanta.　　July term, 1895.

Brooks, by his next friend, sued the receivers of the Richmond & Danville R. R. Co. for damages from personal injuries, alleging: About July 15th, 1893, he was in the employ of defendant in the operation of the railroad as brakeman on a freight-train, which arrived on the evening of that day at Tallapoosa, Ga. It became necessary for the train to take on a freight-car standing on the side-track at this point, and to this end plaintiff was ordered by the conductor, one Payne, who was defendant's vice-principal in

charge of the train, to go over to said car to open the knuckle of the patent bumper thereof, preparatory to attaching the car to the car attached to the engine. At this time the car on the side-track was stationary, and so was the train. Plaintiff had made no signal to move, and it was their duty not to move without a signal from him or the conductor. He stepped up to the car on the side-track and was engaged in opening the knuckle of the bumper, having his back to the engine. While he was in this position, and relying upon the engineer waiting for the signal before he moved back, the engineer suddenly, negligently and recklessly moved back his engine and cars upon plaintiff, and before he was aware thereof the car approaching struck him on the back, and he at once sprang to the side of the track to extricate himself; but defendants had negligently and carelessly allowed the road-bed to be in a dangerous condition at this point. There was a space, four or five inches deep, between the cross-ties, which should have been filled up level to the top of the ties, into which space plaintiff's foot went, and he was thrown violently to the ground before the two moving cars. The person in charge of the engine was one O'Neill, who was only a fireman by occupation, and was then acting as engineer with defendants' consent, and was utterly incompetent and unfit for the position of engineer, and was so known to be by defendants, and had they exercised ordinary care they would have been bound to have known it. No signal was given said engineer, and if any was given plaintiff was not aware of it, and if it was given him to come back it was by the conductor, and the conductor represented defendants in the running and operation of the train. Tallapoosa is an important station, having side-tracks and foundry tracks, and much switching and coupling is done in defendants' yard at this point. It was incumbent on defendants to keep the track and road-bed in a condition reasonably safe, so that employees could safely couple cars on said track, and to

exercise ordinary care to that end.   This defendants failed
to do, and the track had remained in its unsafe condition for
many months.   Defendants knew thereof, and had they ex-
ercised ordinary care, were bound to have known it.
Plaintiff was not aware thereof.   The declaration then set
out with more particularity the alleged defective condition
of the road-bed; the nature of plaintiff's injuries, his earn-
ings, age, etc.   By amendment it was alleged:   The con-
ductor negligently signalled the engineer to come back,
before plaintiff had finished his work of opening the
knuckle, and while he was in such position that any move-
ment of the car would injure him.   The conductor had no
right to give such signal until plaintiff was out of danger.
He was in plain view of the conductor.   The conductor
saw him and knew what he was doing.   Had the conductor
exercised ordinary care, he was bound to have seen him and
have known his perilous condition.   He was ordered by
the conductor to open the knuckle of a car which with other
cars was attached to the engine, and was obeying this order
when injured.   The cars were then standing still, and when
the knuckle was properly opened, were to be moved back
and coupled to other standing cars.   The conductor was
negligent, in that he had entire supervision and control of
the train and represented defendants, and negligently
allowed the engineer to leave his engine, and allowed the
fireman, who was incompetent as an engineer, to handle
the engine; and the fireman was moving the engine when
plaintiff was hurt, and the conductor knew the fireman was
incompetent as engineer.   The conductor saw plaintiff fall,
and saw that the wheel of the car was about to run over
him, and did not signal the fireman in charge of the engine
to stop.   The engine had just started and was going slowly,
and could have been stopped by the fireman if the conduc-
tor had signalled him so to do, and would not have run over
plaintiff's arm; and if it had not stopped before reaching
him, it would have struck him with so little force that it

would not have run over his arm.    Said failure so to signal the fireman by the conductor, as it was his duty to do, was negligence on the part of the conductor who was representing defendants in the management of the train.

After verdict for plaintiff, defendants' motion for new trial was overruled.    The motion was upon the following in addition to general grounds:

The court excluded from the jury the following contract in writing, which was offered in evidence and duly proved to have been executed and signed by plaintiff:    "Richmond & Danville Railroad Company, Lessee.    The Georgia Pacific Railway.    Atlanta, Ga., 11–10, 1892.    I fully understand that the Richmond & Danville Railroad Company positively prohibits brakemen from coupling or uncoupling cars except with a stick, and that brakemen or others must not go between cars under any circumstances for the purpose of coupling or uncoupling, or for adjusting pins, etc., when engine is attached to such cars or train; and in consideration of being employed by said company, I hereby agree to be bound by said rule, and waive any and all liability of said company to me for any results of disobedience or infraction thereof.    I have read the above carefully and fully understand it."

The court charged the jury:    "I put the question in this form, because the conductor of a train out on the road is the representative or vice-principal of the absent master, and not the fellow-servant with the brakeman, while he is engaged in governing its movements.    He has control and direction of its movements, to start it or stop it, and if he be guilty of negligence in these respects it is the master's own negligence."    Alleged to be error, for the reason that the question whether the conductor of the train was or was not a fellow-servant with the plaintiff, under the facts of the case, was a question of fact for the jury, and not for the court to decide.

The court charged:    "If the conductor, who, as I have

said, stood for and represented the absent master in the governance of the train, with power by virtue of his headship to start or stop it as any emergency of service demanded, if he saw the plaintiff stumble and fall, and saw the efforts he was making to extricate himself from his perilous situation, and saw the train moving upon him while in that prostrate position and in a situation of imminent peril, and failed to use ordinary care in reference to commanding the stop of the train to save him, when by the use of such care he could have saved him, you would be authorized to find that the defendants were negligent." Error, for the reason stated in the last preceding ground; and because there is no allegation in the declaration, and no evidence in the record, to justify a charge based upon the failure of the conductor to use ordinary care in reference to saving the plaintiff after the conductor saw the plaintiff in a position of peril; and because the defendants would not be liable for the mere omission of the conductor to avert from the plaintiff injurious results following his stumbling and falling upon the track.    Unless the conductor had some part in bringing about the position of peril, or was guilty of some negligence in that regard, even assuming him to have been not a fellow-servant but the vice-principal of defendants, his mere failure to stop the train, under the circumstances disclosed by the evidence, would not constitute actionable negligence against the receivers.

The court charged: "The question for you to decide on this branch of the case is, did the conductor discover that the plaintiff had stumbled and fallen in front of the advancing train, and was he guilty of negligence in failing to use due care in stopping it in time to avoid the catastrophe?"   Error, for the reasons stated in the ground next preceding.

The court charged: "If, therefore, you believe from the evidence that the conductor knew that Mr. Brooks was

standing on the track, trying to pull the knuckle back, the train then being at a standstill, and you further believe from the evidence that the conductor himself ordered the engineer to come back, and the engineer did so, and that the conductor was negligent in so ordering, in view of the actual occasion and situation as known to him, you would be authorized to find that the master, the defendant sued here, was negligent." Error, because it takes from the jury the question whether the relation of the vice-principal existed between the conductor and the defendants, and whether the conductor was a fellow-servant of plaintiff; and because, on the undisputed evidence, it appeared that the conductor was his fellow-servant, and was not, at the time of the injury, engaged in the performance of any duty resting upon the master as such, but was engaged in a servant's duty.

The court charged: "If you believe from the evidence that the train started, whether in obedience to a signal from the conductor, or without any signal at all, and that plaintiff as he turned from the knuckle to get off the track stepped into a hole between the cross-ties and stumbled and fell, and, being on his all-fours, scrambled along the track a certain distance in an effort to keep from being caught by the train, and the conductor discovered this in time, by the exercise of ordinary care, to signal the engineer and stop the train before it caught and mangled plaintiff, and negligently failed to do so, you would be authorized to find that his negligence in this regard was the negligence of the defendants." Error, for the reasons stated in the preceding grounds, and because the court should have taken into account the fact of the great alarm of the conductor, as shown in the evidence, and should have charged that the conductor, being so alarmed, and without fault on his part, and seeing plaintiff in a situation calculated to excite great consternation and alarm, would not, under such circumstances, be held to the exercise of that calm and de-

liberate judgment which a man should exercise who was not under the influence of such excitement and alarm. In another part of the charge the court instructed the jury, with reference to the conduct of the plaintiff, as follows: "Where one is put by the negligence of another under circumstances of grave peril, and he must choose instantly between two courses of conduct, both of them hazardous, and he chooses a course which results in injury, whereas if he had chosen the other he would not have been hurt at all, the law will leave it to the jury to say whether, under the particular circumstances, he exercised a due care, commensurate with the actual circumstances as they were presented to him at the time." Defendants submit that the same principle of law which, in a position of danger not brought about by his own carelessness, would exonerate the plaintiff from the exercise of a high degree of care, would, under the circumstances in which the conductor was placed, be equally applicable to him.

The court charged: "On the other hand, if you believe from the evidence that after the conductor discovered that plaintiff had stumbled and fallen on the track, that owing to the shortness of the interval both as to time and distance, and the close proximity of the train, and the speed at which it was moving, and the position in which the conductor stood, that he could not signal the engineer sooner than he did signal him, or that he used due care as to the signal he gave, and that the engineer was negligent in not more promptly responding to it and stopping the train, or that without negligence on the part of either the conductor or the engineer the train could not have been stopped in time to save the plaintiff, then you would be authorized to find that the defendants were not negligent upon this branch of the case." Error, because it makes the liability of the defendants to depend upon the failure of the conductor to interpose to avert the injury, without reference to whether plaintiff's perilous position was caused through

his own negligence or by the negligence of the engineer, in neither of which cases would the defendant be liable; and for the reasons stated in preceding grounds.

The court charged: "If you believe from the evidence that the conductor was not guilty of negligence in making timely efforts to stop the train, if it was coming back without his instructions and not at plaintiff's own instance, there can be no recovery. On the other hand, if the injury of which plaintiff complained was attributable to the negligence of the conductor in either of the two respects mentioned, the plaintiff would be entitled to recover, provided the plaintiff could not, by ordinary care on his part, have avoided the consequences to himself of the negligence." Error, because defendants are not liable by reason of the mere failure of the conductor in making timely efforts to stop the train, if the train came back without instructions. In such event the proximate cause of the injury would be manifestly the negligence of the engineer or fireman, for whose acts the defendants would not be liable, being plaintiff's fellow-servants. And the charge was not warranted by the pleading or the evidence.

*Glenn, Slaton & Phillips,* for plaintiffs in error.
*J. T. Pendleton* and *Arnold & Arnold,* contra.

SIMMONS, Chief Justice.

Brooks, a minor, was employed by the receivers of the Richmond and Danville Railroad Company as brakeman on a freight-train, and while so employed sustained serious personal injuries by reason of his being run into by the train when engaged in opening the "knuckle" of the bumper of a car, under the direction of the conductor of the train, preparatory to coupling that car to others belonging to the train. By his next friend he sued the receivers for damages, alleging negligence on the part of the defendants and the conductor; and recovered a verdict for $1,500. The defendants made a motion for a new trial, the grounds of which

are set out in the reporter's statement, and to the overruling of the motion they excepted.

1. It is complained that the court erred in excluding, when offered in evidence by the defendants, a contract in writing between the plaintiff and the Richmond and Danville Railroad Company, whereby the plaintiff agreed to be bound by a rule of the company prohibiting brakemen from going between cars for the purpose of coupling or uncoupling, etc., and agreed to waive liability of the company to him for any results of infraction of the rule. There was no error in excluding this contract. It was not a contract with the receivers, but one entered into with the company prior to the receivership. When the company ceased to operate the road and the receivers took charge of it, the latter were not bound to retain the employees of the former, and the contracts of the company with its employees were not binding on the receivers unless adopted by them; nor, in the absence of such an obligation on the part of the receivers, were such employees bound to abide by the terms of any contract entered into with the company. The contract in question, therefore, was not necessarily binding between the plaintiff and the receivers, and there was no evidence showing any adoption of it as between them, either directly or by implication.

2, 3. It was complained that the trial judge, in his charge to the jury, erred in assuming that the conductor was the *alter ego* of the defendants on the occasion in question, thereby excluding the theory of the defendants that they were fellow-servants, and that the company was therefore not liable for any injury resulting from the negligence of the conductor. Ordinarily the conductor of a train has control of its movements, and brakemen connected with the train are, while engaged in coupling cars to the train at stations, subject to his orders and under his control; and he is not, when directing the movements of the train and giv-

v 97-44

ing orders to the brakeman and the engineer in connection therewith, a fellow-servant of such employees, within the meaning of the rule as to fellow-servants, but is a vice-principal of the master. See *Mills* v. *East Tenn. Ry. Co.*, 87 *Ga.* 105; *Prather* v. *Richmond & Danville R. Co.*, 80 *Ga.* 436, and cases cited. The evidence in this case discloses nothing which would take it out of the general rule above stated. It shows that the conductor was in fact directing and controlling the movements of the train, and that the plaintiff and the engineer were acting under his orders at the time of the injury. The instructions complained of were therefore not improperly based upon the assumption that the plaintiff and the conductor were not fellow-servants.

4. The charge was not in other respects erroneous; the evidence warranted the verdict, and there was no error in denying a new trial.       *Judgment affirmed.*