Railroad v. Baldwin.

ALABAMA GREAT SOUTHERN RAILROAD COMPANY *v.* L. BALDWIN.

(*Knoxville.* September Term, 1904.)

1. **MASTER AND SERVANT.** Railroad conductor is a vice principal, and the company is liable for his negligence.
 The conductor of a railroad train is a vice principal of the railroad company, and the company is liable for his negligence while acting in his official capacity, and where resulting in injury to a brakeman. (*Post, pp.* 413, 418.)

 Cases cited and approved: Railroad v. Spence, 93 Tenn., 181, 182; Railroad v. Ross, 112 U. S., 377, 28 L. Ed., 787; Prather v. Railroad, 80 Ga., 436; Mills v. Railroad, 87 Ga., 105; Spencer v. Brooks, 97 Ga., 681.

2. **SAME.** Same. Case in judgment.
 Where the conductor of a freight train prematurely, carelessly, negligently, and wrongfully signaled to the engineer to back the train for the purpose of making a coupling, at a time when the brakeman was between the cars preparing them for coupling, but before he had made the preparation or before he was ready, the conductor was acting in his official capacity as vice principal of the railroad company and not merely as a fellow servant of the brakeman, and the railroad company is liable for an injury thus inflicted upon the brakeman.

3. **SAME.** Vice principal may become a fellow servant with those under his control, when.
 A vice principal may lay aside his official character and engage in the common service of the other servants under his control, and his acts and negligence, while thus engaged, are those of a fellow servant, for which the employer is not ordinarily responsible; but he cannot act in both capacities at the

Railroad v. Baldwin.

same time, and, in order to exonerate the employer, the service or act done by him must be strictly that of a fellow servant, and not one which it is his duty to do, or which he may do, as a superior or vice principal. (*Post, pp.* 413-415.)

Cases cited and approved:   Allen v. Goodwin, 92 Tenn., 386; Railroad v. Bolton, 99 Tenn., 274; Gann v. Railroad, 101 Tenn., 380.

4.   **SAME.   O**rders presumed to be given in capacity of vice principal.

The giving of orders and signals (for a signal is as much an order as if spoken) is essentially the province of the master or his representative, and when given by them to a servant, or one under their control, it will be presumed to be made in the capacity of master, and must be obeyed. (*Post, pp.* 415-420.)

Cases cited and approved:   Hoke v. Railroad, 88 Mo., 360 Prather v. Railroad, 80 Ga., 436; Mills v. Railroad, 87 Ga., 105; Spencer v. Brooks, 97 Ga., 681; Devine v. Railroad, 159 Mass., 351; Walker v. Gillett, 59 Kan., 214; Purcell v. Railroad, 119 N. C., 728-738; Railroad v. Williams, 86 Va., 165; Cole v. Wood, 11 Ind. App., 34; Clark v. Hughs, 51 Neb., 780.

### FROM HAMILTON.

Appeal from the Circuit Court of Hamilton County. —M. M. ALLISON, Judge.

SHEPHERD & FRIERSON, for Railroad.

SMITH & CARSWELL, for Baldwin.

Railroad v. Baldwin.

MR. JUSTICE SHIELDS delivered the opinion of the Court.

The defendant in error, L. Baldwin, a brakeman in the employ of the plaintiff in error, while attempting to make a coupling in the operation of one of its trains, through the negligence of Edgar Fuller, conductor in charge of the train in prematurely signaling the engineer to back his engine and a car attached for the purpose of making a coupling, had his arm caught between the bumpers of the cars to be coupled, and crushed, and brought this suit to recover the damages sustained by him, and recovered judgment.

The contention of the plaintiff in error is that Edgar Fuller, when he signaled the engineer, was not acting in his official capacity as conductor, but as a fellow servant of the defendant in error, and that it is not responsible for the negligence of which he was guilty while so acting,

There is no controversy as to how the injury was sustained. The conductor and his crew were engaged in making up a freight train, and were attempting to couple a car attached to the engine to one on the side track; both of the cars being equipped with automatic couplers. The first effort failed, and another was being made when the injury was inflicted. The declaration correctly states the facts in relation to the last effort to make the coupling in these words:

"Plaintiff in the discharge of his duty thereupon went in between said cars which were then standing still, one

coupled to the engine, and proceeded to adjust the said couplings by opening the 'knuckle' thereof, and to otherwise set the two drawheads so that the two cars might be properly coupled. While the plaintiff was standing in between the two said cars, entirely out of sight of the engine, and while he was endeavoring to adjust the said couplings in a proper manner, acting in a careful manner, and in the proper discharge of his duties, the defendant's conductor, Edgar Fuller, then and there the immediate superior of plaintiff, carelessly, negligently, and wrongfully signaled to the engineer to shove up the car which was attached to the engine upon and against the car to which it was to be coupled, although the said conductor knew, or by the exercise of ordinary care should have known, that the plaintiff had not adjusted said drawheads and was not ready for said coupling to be made. The engineer, upon receiving said signal from the said conductor, thereupon pushed on said car, as it was his duty to do in response to said signal, and the plaintiff's hand and arm was then and there caught in between the drawheads, deadwoods, bumpers, or ends of said two cars, and was crushed and mangled in and between said drawheads."

It also appears in evidence that the defendant in error could have given the signal to the engineer to back the engine and car or to another brakeman to be repeated to the engineer, or to the conductor, for that purpose, and the engineer would have obeyed it. In other words, the order to the engineer to move his train back-

Railroad v. Baldwin.

ward or forward in making a coupling does not necessarily have to be given by the conductor, but may be given by a brakeman making the coupling; but the conductor may take immediate charge and direction of the matter, and give all necessary signals and orders, which conductor Fuller did on this occasion.

The conductor of a train is the superior in authority and grade in every train crew, and has charge of the train and its operations, and all the other members of the crew are under his control and subject to his orders, which they must obey, regardless of whether they concur in the necessity or propriety of them. He is the representative of the company, and is vested with all of its authority over the train and its crew in the work being done, and charged with all the duties and responsibilities which the company owes to its employees, engaged in this perhaps the most hazardous of all industrial pursuits, chief of which is the duty to carefully and skillfully superintend the movements of its cars and trains for the prevention of accidents, upon the proper discharge of which the safety of the employees is so greatly dependent. He is a vice principal of the company, and it is liable for his negligence when acting in his official capacity. *Railroad Co.* v. *Spence,* 93 Tenn., 181, 182, 23 S. W., 211, 42 Am. St. Rep., 907; *Railroad Co.* v. *Ross,* 112 U. S., 377, 5 Sup. Ct., 184, 28 L. Ed., 787.

This is conceded by the plaintiff in error to be the general rule, but it insists that a vice principal may act in a dual capacity; that is, he may lay aside his official or

representative character, and engage in the common service with the employees who are under him and subject to his orders, and when he does so he is a fellow servant only, and any negligence of which he may be guilty while so acting is personal, and that of a fellow servant, for which the employer is not liable, and that in this case the order or signal to the engineer to move his engine backward, being one which could have been given by a brakeman, was of this character. The case of *Allen* v. *Goodwin,* 92 Tenn., 386, 21 S. W., 760; *Railroad* v. *Bolton,* 99 Tenn., 274, 41 S. W., 442; and *Gann* v. *Railroad Co.,* 101 Tenn., 380, 47 S. W., 493, 70 Am. St. Rep., 687, are cited to sustain this contention.

The rule in this State as held in these cases, unquestionably is that a vice principal may at times lay aside his official character and engage in the common service of the other servants of the employer over which he has control, and that his acts and negligence, while thus engaged, are those of a fellow servant, for which the employer is not ordinarily responsible; but he cannot act in both capacities at the same time and, in order to exonerate the employer, the service or act in performance of which he is engaged must be strictly that of a fellow servant, and not one which it is his duty to do, or which he may do, as a superior or vice principal. The cases in which the doctrine has been applied by this court are where the vice principal was, at the time the injury was inflicted through his negligence, engaged solely in the work or service of a common employee.

Railroad v. Baldwin.

In all those above cited, the vice principal was performing manual labor along with the other employees. In *Allen* v. *Goodwin* the negligence complained of was that of a foreman, working upon a building in a position above the plaintiff, in dropping a piece of pipe upon him.

In *Railroad* v. *Bolton* a section boss negligently injured one of the section men under him while he was personally assisting him in lifting and unloading some heavy timbers; and in *Gann* v. *Railroad Co.* the action was sought to be maintained on account of the negligence of the section boss in operating the brake upon a hand car, which was the work of the section men under him, whereby the car was thrown from the track and one of the men injured.

In none of these cases, or any other to which we have been cited, was the injury the result of a negligent order or direction given by a superior servant.

The vice principal cannot act in the capacity of superior and fellow servant at one and the same time, and, if the act is one which he could do in either capacity, it will be held to have been done in the capacity in which it is his special duty to act; but the nature of the act may also be considered in determining the character in which he was acting.

The giving of orders, and a signal, is as much an order as if spoken, is essentially the province of the master or his representative, and when given by them to a servant,

or one under their control, it will be presumed to be made in the capacity of master, and must be obeyed.

The fact that the engineer would have obeyed the signal, if given by the brakeman, is immaterial, since the order was in fact given by his superior in the line of his authority, and he had no discretion but to obey it. There seems to be no conflict in the authorities upon this subject. In the late work of Mr. Labatt on Master and Servant, it is said:

"The logical consequence, if not the actual effect, of some decisions referred to in section 544, supra, is to absolve the master even from the result of complying with the negligent order of a vice principal, where such order relates merely to the details of the work. But there is an overwhelming weight of authority to sustain the doctrine that the liability to which the master is declared to be subject, wherever 'the negligent act is the direct result of the exercise of power conferred by the master, in the performance of a duty devolving by law upon him,' is predicable in the case of orders issued in respect to the work, whatever may be the precise object to which those orders may have relation. It is, in fact, difficult to see what more indisputable example there can be of an exercise of authority than the giving of such orders, and for the purpose of affecting the master with liability in this instance it is obviously quite immaterial whether the delinquent employee be a mere superior servant or a general or departmental manager. According to the great majority of the cases, therefore, all that is

necessary to fix liability upon master is that the negligent order which caused the injury should be proved to be incident to the performance of the duties of his position.

"The order may be a negligent one because the servant is directed to use dangerously defective appliances, or to work in an abnormally dangerous place, or to work in a dangerous manner, or do something which, under the circumstances, will render the place of work abnormally dangerous for a fellow servant."

The author cites numerous cases, which, so far as we have access to them, seem to fully sustain the text.

In the case of *Hoke* v. *Railroad,* 88 Mo., 360, it is said:

"Where a roadmaster of a railroad, having general superintendence of its tracks, while engaged in superintending and directing the removal of a wreck, gives a wrong signal to the engineer of a train assisting in removing the wreck, whereby a laborer engaged in the work of removal is injured, the railroad is liable therefor.

"The roadmaster was not a fellow servant of the one injured in the transaction in which the injury was received, but represents the company therein as vice principal, or *alter ego,* and his negligence in the matter, causing the injury, was that of the company. . . .

"In the case at bar, as has been seen, Tracy, whose negligence and carelessness in giving signals to the engineer occasioned the injury in question, was not at the

Railroad v. Baldwin.

time engaged or assisting in the manual work of removing said wreck from the roadbed and track of defendant, or in loading said wrecked car upon said wrecking train, but was engaged as such in superintending, directing, and controlling said laborers, including plaintiff, in said wreck, and in that particular was in the line of his duty; and the road was liable."

And in a recent case decided by the supreme court of Georgia, where the facts were almost the same as those in the case at bar, it was held:

"It was complained that the trial judge, in his charge to the jury erred in assuming that the conductor was the *alter ego* of the defendants on the occasion in question, thereby excluding the theory of the defendant that they were fellow servants, and that the company was therefore not liable for any injury resulting from negligence of the conductor. Ordinarily the conductor of a train has control of its movements, and brakemen connected with the train are, while engaged in coupling cars to the train at stations, subject to his orders and under his control; and he is not, when directing the movements of the train and giving orders to the brakemen and engineer in connection therewith, a fellow servant of such employees, within the meaning of the rule as to fellow servants, but is a vice principle to the master. See *Mills* v. *E. Tenn. Ry. Co.,* 87 Ga., 105, 13 S. E., 205; *Prather* v. *Richmond & Danville R. R. Co.,* 80 Ga., 436, 9 S. E., 530, 12 Am. St. Rep., 263 and cases cited." *Spencer, Receiver,* v. *Brooks,* 97 Ga., 681, 25 S. E., 480.

Railroad v. Baldwin.

The supreme court of Massachusetts, in the case of *Devine* v. *Railroad,* 159 Mass., 351, 34 N. E., 539, where the plaintiff was injured by the negligence of the conductor in improperly signaling the engineer to move back some cars, said:

"He (the conductor) gave the stop motion, as he himself testified, to the first three cars that were detached from the train. He also testified that he gave the kick motion for the two that struck the bunting post; but he does not seem to remember whether he gave the stop motion for them that morning or not. Nobody appears to remember who gave the stop motion that morning for these two cars. It appears from the testimony of the engineer and conductor that the stop motion was usually given by the conductor. It also appears from the testimony of the conductor that, when the two cars were kicked onto the stub track, he stood at the switch. It is not reasonable to suppose that that was a place from which the stop motion could be easily given. It is said that the switchman sometimes gave the motion, but ordinarily he would not give it with the conductor at the switch. And the road was held liable for the negligent signal, although, as seen, the switchman also had authority to give the signal."

The same rule has been announced and applied in the cases of *Walker* v. *Gillett,* 59 Kan., 214, 52 Pac., 442; *Purcell* v. *Railroad,* 119 N. C., 728-738, 26 S. E., 161; *Railroad Co.* v. *Williams,* 86 Va., 165, 9 S. E., 990, 19 Am. St. Rep., 876; *Cole Bros.* v. *Wood,* 11 Ind. App., 37,

Railroad v. Baldwin.

36 N. E., 1074; and *Clark* v. *Hughes,* 51 Neb., 780, 71 N. W., 776.

We are therefore of the opinion that there is evidence of negligence upon the part of the railroad company to sustain this verdict, and the assignment of error to the contrary, and under which this question is made, is overruled, and the judgment of the circuit court affirmed.