## TRAVELERS' INSURANCE COMPANY *v.* AUSTIN.

1. A paymaster of a railroad company, traveling upon business of the company from station to station on the line of the company, and stopping between stations for the purpose of paying off employees of the company wherever they may be, is not, while so doing, a "passenger" within the meaning of a clause in a policy of accident insurance granting double indemnity to the insured if injured while riding as a passenger on a passenger-car using steam as a motive power.

2. A coach specially equipped and used as a pay-car, and not a vehicle for the transportation of passengers, is not, in contemplation of the contract alluded to in the preceding headnote, a passenger-car; and this is so although it had formerly been used as a passenger-car and was capable of being so used again.

Argued July 1, — Decided August 8, 1902:

Action on accident-insurance policy. Before Judge Nottingham. City court of Macon. October 5, 1901.

*Dessau, Harris & Harris,* for plaintiff in error, cited 80 *Ga.* 427; 66 *Ga.* 252; 67 *Ga.* 306; 2 Am. & Eng. Enc. L. (1st ed.) 742; 5 Id. (2d ed.) 488, 516, notes; Ray, Neg. 5; Rap. & L. Law Dic.; "Passenger-car," Webst. Dic.; 5 Am. Neg. Cas. 425; 21 Pac. 660; 121 Cal. 458; 8 Am. & Eng. R. Cas. 685; 15 Id. 226; 17 Id. 614; 47 Id. 580; L. R. 1 C. P. 291; 138 Mass. 387; 11 Kas. 83; 83 Am. D. 549; 113 U. S. 219; 162 U. S. 359; 176 U. S. 498; 95 N. Y, 267, s. c. 47 Am. R. 36; 2 Wood's Ry. L. 1045; 45 Fed. 543; 67 Fed. 524; 86 Fed. 289; 36 Mo. 418; 46 Atl. 109; 44 Atl. 592; 30 Kas. 689, s. c. 1 Pac. 139; 108 Fed. 935; 86 Fed. 289; Civil Code, § 3675, par. 2; 91 *Ga.* 698; 101 *Ga.* 64.

*Robert Hodges* and *Roland Ellis,* contra, cited 5 Am. & Eng. Enc. L. (2d ed.) 507, 516; 1 Id. (2d ed.) 305, 306; 47 La. Ann. 1107; 59 Pa. St. 239; 52 Id. 382; 5 Ind. 239; 20 Colo. 132; 47 Ill. 108; 53 Wis. 657; 86 Tenn. 243; 125 Mo. 666; 108 Mass. 7; 121 Cal. 458, 53 Pac. 919; 101 *Ga.* 64; 3 Biss. 399.

FISH, J. The plaintiff in error issued to Austin, the deceased husband of the defendant in error, an accident-insurance policy which provided for the payment of certain indemnities in the event of accidental injuries to the insured, and of $5,000 to his widow in case of his death as a result of such injuries. The policy contained a stipulation that "if such injuries are sustained while riding as a · passenger and being actually in or upon any railway passenger-car

using steam, cable, or electricity as a motive power, . . the amount to be paid shall be double the sum specified in the clause under which claim is made." Austin was paymaster and cashier of a railroad company. It was his duty to pay the salaries of the employees of the company, and to that end he made periodical trips over the line of the railroad in what was known as a pay-car. This car had originally been one of the regular sleeping-cars in use on the railroad, but had been altered so as to make it serve the purpose before indicated. It was described by one of the witnesses as follows: " In the front end there was a cooking-stove, and all of the things for cooking; in the center of the car there were regular Pullman berths to sleep twelve people, and in the observation end, which we used for paying off, it had two large windows and a settee, and some nice chairs, and a table that we used for a dining-table. In the part exclusive of the kitchen and observation end where the money was paid out there were regular seats, the same that any other passenger or sleeping car has." It was also equipped with an iron safe in which money was kept, and with guns and ammunition for the protection of the property in the car. On occasions the equipment of the car was changed, and it was put into service as a regular sleeping-car. The pay-train did not run on a regular schedule, but stopped at any station, or between stations, where it was necessary to pay out money. Austin would frequently count out money between stations, preparatory to paying it at the next stop. While on one of these trips the pay-car was derailed and overturned, and a rifle hanging in a rack in the car was thrown to the floor and discharged, killing Austin. His widow demanded double indemnity under the clause of the policy before quoted. This was refused, and she brought suit for $10,000. The insurance company, in its answer, admitted liability for $5,000, and made a tender of that amount in full of all claims against it, which was refused, and the case went to trial. There was practically no conflict in the testimony of the witnesses, the material portions of which have been substantially set out above; the only evidence introduced by the insurance company being an extract from the proof of death submitted by Mrs. Austin, to the effect that the injury which caused her husband's death was received while he was engaged in discharging his duties as cashier and paymaster of the Georgia Southern and Florida Railroad Co. At the conclusion of the evidence,

counsel for the defendant made a written motion to direct a verdict in its favor on the controlling issue in the case, viz., the right of the plaintiff under the evidence to recover double indemnity. This motion was denied, and the case went to the jury, who found for the plaintiff the full amount sued for. The defendant made a motion for a new trial, which was overruled, and it excepted.

1. From the foregoing it will be seen that the single question presented for determination by this case is whether or not, under the admitted facts, Austin was, at the time of receiving the injuries which caused his death, riding as a passenger upon a railway passenger-car, within the meaning of that clause of his policy of insurance which provided that he should receive double indemnity in the event that he should be accidentally injured or killed while so riding. This question may be subdivided into two branches: first, was he a passenger; and second, was the car in which he was riding a passenger-car? "A passenger, in the legal sense of the term, is one who travels in some public conveyance by virtue of a contract, express or implied, with the carrier, as to the payment of fare, or that which is accepted as an equivalent therefor." 5 Am. & Eng. Enc. L. (2d ed.) 486. "One may be both a passenger and an employee of a railroad company; an employee when passing over the road at a time when actually engaged in performing duties for the company, but a passenger while not so engaged but riding from one place to another, even though continuing all the while in a popular sense in the employ of the company." Id. 516. It is not denied that Austin was an employee of the railroad company at the time he was killed; the question is, was he also a passenger? The mere fact that he was not a part of the operating force or train crew engaged in the act of propelling the train does not, as seems to be contended by counsel for the defendant in error, invest him with that character. He was certainly "passing over the road at a time when actually engaged in performing duties for the company." His case can not be analogized to that of an official or an attorney who travels over the road for the purpose of reaching a point where duties are to be performed for the company, and who while so traveling is engaged in the performance of no duty whatever. While the pay-train was going from one station or point to another the paymaster was as much on duty as is the flagman of a passenger or freight train, whose sole duty it is to keep a lookout for other trains

when the train on which he is riding has stopped between stations. In the case of *Prather* v. *R. Co.*, 80 *Ga.* 427, the deceased husband of the plaintiff was one of a gang employed on the defendant's material-train to load and unload cars, and it was his duty "to do anything to insure the careful working of the train." He was killed while the train was moving from one point to another, and at a time when he had no active duty to perform. The question arose whether or not he was a coemployee of those who were actually operating the train. This question was decided in the affirmative, our present Chief Justice who delivered the opinion using the following language, which we think is directly applicable to the case at bar: "The fact that he had no active duty to perform while riding from one point of work to another did not make him any the less an employee during those times. He could not be an employee whilst at work at one mile-post, and, having finished there, get on the car to go to the next mile-post, and while riding the mile become a passenger, and at the end of the mile become an employee again." If the reasoning there employed be correct, the case cited settles beyond all question that Austin was not, in legal contemplation, a passenger; and hence that his widow is not entitled to recover the double indemnity for which she sues.

This view is not in conflict with any of the cases cited in the brief of counsel for the defendant in error. A case upon which special stress seems to be laid is that of Berliner *v.* Insurance Co., 121 Cal. 458, where the Supreme Court of California held that the plaintiff was entitled to recover double indemnity under a clause in a policy of accident insurance almost identical with the one now under consideration, although the insured at the time of the accident, by invitation of an officer of the railroad company, was riding upon the engine of the train on which he was traveling; it being ruled that the fact of his riding upon the engine did not deprive him of his character of passenger. That case, however, can not properly be compared to the one now under consideration, because the relationship of the insured to the railroad company in the two cases was widely different. Berliner, so far as appears from the published report, was not employed by, or connected with the railroad. Apparently he had paid his fare before beginning his journey. The court in that case takes special occasion to say, on page 465, that if he had been riding on the train as an employee of

the railroad company, the insurance company would not be liable under the clause providing for double indemnity. In the case of Jones *v.* R. Co., 125 Mo. 666, it was held that the porter of a Pullman sleeping-car occupied the position of a passenger of the railroad company in respect to the careful running and management of the train; but in that case the porter was not employed by the railroad company, as was the paymaster in this case. On the other hand, in the well-considered case of McQueen *v.* R. Co. 30 Kas. 689, it was held that a plaintiff in the employment of a railroad company, painting depots, bridges, tanks, and switches along the line of the road, and who was transported over the road, to discharge the duties of his employment, in a small steam car used only by officers and employees of the railroad company, was not a passenger within the true sense of that term, nor entitled to the rights of a passenger. That case is in principle directly parallel with the case now before us; and while not binding on us, its reasoning is satisfactory to us as authority for the position that we take. To the same effect see Kansas Pac. R. Co. *v.* Salmon, 11 Kas. 83. The reason for making a distinction in the contract of insurance between passengers riding as such, and employees of a railroad company in the discharge of their duties, is not far to seek. The law throws greater protection around passengers than employees, and requires of railroad companies greater diligence in providing for their safety. Consequently the risk of insuring a passenger is not so great as that of insuring an employee. With this in view the true test to be applied, to determine whether one injured in a railroad accident can recover from an insurance company double indemnity, is to inquire whether, presuming that a right of action exists against the railroad company, the plaintiff would be entitled to sue that company in the capacity of a passenger or an employee. In Austin's case to ask that question is to answer it, for it is clear that the railroad company owed him no other duty than that of employer to employee, and if liable to his widow, is only so on the ground of that relationship.

2. The evidence shows that the car in which Austin was riding at the time of the accident was a coach specially equipped for use by the officers and employees of the railroad company as a pay-car. It was not in any sense a passenger-car within the meaning of the contract of insurance, any more than a mail or baggage car could

be so considered. It was used for a particular purpose, and that purpose was not the transportation of passengers. That it had formerly been used as a passenger-car, and was capable of being so used again, can make no difference, in view of the fact that at the time of the accident it was used for an altogether different object. The testimony of a witness that it was a passenger-car was improperly admitted, being merely his conclusion from a given state of facts, and is unavailing in the face of other evidence which described the car in detail and negatived such a conclusion.

The foregoing disposes of the case on its merits favorably to the contentions of the plaintiff in error. It follows that the charges of the court which were not in consonance with the principles here laid down were erroneous; that the trial judge should have directed a verdict in favor of the insurance company as to the double indemnity; and that the verdict returned for the plaintiff for the full amount sued for was contrary to law and the evidence, and should have been set aside on motion for new trial.

*Judgment reversed. All the Justices concurring, except Lewis, J., absent.*