CARSWELL, by next friend, *v.* MACON, DUBLIN & SAVANNAH RAILROAD COMPANY.

1. One employed by a railroad company as a telegraph lineman, and who is transported to and from his work free of charge by the railroad company, and who while so traveling has nothing to do with the control or operation of the train on which he is riding, is a passenger to the extent that the company is bound to exercise extraordinary diligence to keep from injuring him.
2. The evidence in the present case did not demand a verdict for the defendant ; and the charge of the court, which was at variance with the principle announced in the preceding headnote, will therefore require the grant of a new trial.

Argued October, 8 — Decided October 30, 1903.

Action for damages.    Before Judge Hodges.    City court of Macon.    April 20, 1903.

*John R. Cooper* and *Marion W. Harris*, for plaintiff.
*John M. Stubbs* and *Minter Wimberly*, for defendant.

CANDLER, J.    The plaintiff below, who is also the plaintiff in error in this court, was a telegraph lineman in the employment of the defendant railroad company, and his duties consisted in " repairing, putting up, and fixing telegraph wires, and doing other such work for the defendant company."    He was a member of a gang of such workmen, whom the defendant transported over its line of railroad free of charge between points on the line where their work might be needed.    These workmen were carried in freight-box cars which were fitted up as " camp cars" especially for their use, and it is inferable that they ate and slept in these cars.    While the plaintiff was being thus transported over the defendant's line, several cars in the train, including the one in which he was riding, were derailed and turned over, and he was injured. He brought suit against the company, charging that it was negli-

gent in that its employees were at the time running the train at an improper and dangerous speed; that "the wheels, track, and other appliances and machinery of the car upon which petitioner was riding was defectively constructed and out of repairs, so the wheels and cars could not safely run upon the track;" that the track was not properly graded at the point where the derailment took place; and that the employees of the defendant failed to properly inspect the wheels of the cars "and its other appliances and machinery about the train, and its said track [and] road-bed at the point where the injury occurred." On the trial the jury found for the defendant. The plaintiff made a motion for a new trial on numerous grounds, which was overruled, and he excepted.

1. There is nothing in the evidence to indicate, and indeed it is not claimed, that the plaintiff was at any time guilty of negligence contributing to his injuries. He was in one of the "camp cars" of the defendant company, riding from the place where he had been at work, towards the city of Macon. The court charged, in effect, that the defendant was only bound to exercise ordinary diligence to prevent the plaintiff's injuries, and that, before the plaintiff could recover, it must appear that he was free from fault and did not contribute in any way to his injuries. It is apparent from the entire charge that the trial judge regarded the case as an ordinary action by an employee of a railroad company to recover damages from his employer for injuries received while in the discharge of his duties, and that the trial was conducted throughout on this theory. This was error. It is true that at the time his injuries were received the plaintiff was an employee of the defendant company. He was not, however, in the discharge of his duties at the time; he was, in a sense, a passenger as well as an employee, and the defendant owed him the duty of extraordinary diligence to protect his safety. It is well settled that one may be both a passenger and an employee of a railroad company; "an employee when passing over the road at a time when actually engaged in performing duties for the company, but a passenger while not so engaged, but riding from one place to another, even though continuing all the while in a popular sense in the employ of the company." 5 Am. & Eng. Enc. L. (2d ed.) 516; *Travelers' Ins. Co.* v. *Austin,* 116 *Ga.* 266. The plaintiff comes clearly within the class of employees "who can not possibly control those who should exercise care and dili-

gence in the running of trains;" and it is expressly provided by the Civil Code, § 2297, that railroad companies " shall be liable to such employees as to passengers for injuries arising from the want of such care and diligence." See also *Atlanta R. Co.* v. *Ayers*, 53 *Ga.* 12; *Atlanta R. Co.* v. *Webb*, 61 *Ga.* 589. This case is, as to its facts, easily distinguishable from the cases of *Prather* v. *R. Co.*, 80 *Ga.* 427, and *Travelers' Ins. Co.* v. *Austin*, supra. In the *Prather* case, the deceased, for whose homicide the action was brought, was a train-hand, whose duty it was "to do anything to insure the successful working of the train." Carswell, the plaintiff in this case, was, as has been said, a telegraph lineman; he had nothing whatever to do with the operation of the train, and was on it solely for the purpose of riding from one point to another. In the *Austin* case, which was an action for the double indemnity stipulated for in an accident-insurance policy in the event the insured should be injured or killed while riding as a passenger on a passenger-train, it appeared that the deceased was actually engaged in his duties while in transit, and that the car in which he was riding when killed was fitted up especially for his work as paymaster of the railroad company. Furthermore, the *Austin* case did not deal in any way with the duty of diligence on the part of the railroad company to the deceased, but had to do solely with the question whether, at the time he was killed, Austin was technically a passenger within the meaning of the contract of insurance on which the suit was brought. It is clear, therefore, that that case has no bearing, one way or the other, on the question now under consideration.

2. It is clear that the error pointed out in the foregoing must work a reversal of the judgment overruling the motion for a new trial, unless it appears that the verdict was demanded by the evidence, — that is, that, in spite of the erroneous charge of the court, the evidence demanded a finding that the company fulfilled its duty to exercise extraordinary diligence for the safety of the plaintiff, — and that any different verdict from the one returned would have been unwarranted and illegal. While the defense made by the railroad company was undeniably a strong one, and amply authorized such a finding as we have indicated, we can not say that it demanded it. The evidence as to the cause of the derailment of the train was conflicting. The contention of the de-

fendant was that it was caused by the breaking of the flange of a wheel on a freight-car other than the one in which the plaintiff was riding; that the wheels of the freight-car in question were thoroughly inspected and found to be in good condition before the car was taken out with the train, and that the breaking of the flange could not possibly have been prevented by human foresight. This contention was supported by the evidence introduced in behalf of the defendant. On the other hand, there was evidence for the plaintiff, which, if believed by the jury, would have authorized them to find that the derailment of the train was not caused by the broken flange of the freight-car, but that one of the cars occupied by the gang of workmen of which the plaintiff was a member was the first to leave the track; that such car had what was known as a "flat" or defective wheel; and that at the time the train ran off the track it was being run at a negligently high rate of speed; and from these facts it might well have been inferred that the plaintiff's injuries were due to the negligence of the defendant. In regard to the inspection of the wheels of the car which the defendant contended first left the track and caused the plaintiff's injuries, the conductor of the train testified that he did all that could have been done to make a thorough inspection, and that it was impossible by the inspection made to discover any defect in the flanges of the wheels. What he did was described by him as follows: "When I came to that car to take it on the train, I inspected it as I generally do all others. I went down one side and back the other, and examined the draught timbers and brake hangers and flanges and wheels. The light I had to examine it with was my lantern." Another witness for the defendant, however, testified: "You could not discover defects in the flange just by walking on the side of the car; you would have to examine it. . . You have to look on both sides of the wheel." In view of these conflicts in the evidence, as well as others which need not be enumerated, we conclude that a finding that the railroad company exercised extraordinary diligence to prevent the plaintiff's injuries was not demanded, and that the charge to the jury, instructing them that the defendant was only bound to exercise ordinary care, was error of such importance as to require the grant of a new trial. The motion for a new trial contains numerous other grounds, none of which, in our opinion, dis-

close any substantial error on the part of the trial court. The case is sent back for another hearing solely on the ground of the erroneous charge to which we have referred.

*Judgment reversed. All the Justices concur.*