ANTONE ENOS *vs.* R. I. SUBURBAN RAILWAY COMPANY.

MAY 13, 1907.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1)  *Common Carrier.   Fellow-Servants.   Passengers.*

Where a servant earned fourteen transportation tickets as well as eight dollars as his weekly wages and boarded a car of defendant after his day's work was fully completed, these facts made him a passenger, and not a fellow-servant of defendant's with those causing his injury.

(2)  *Common Carriers.   Negligence.*

*Semble:* evidence of an inefficient brake coupled with evidence that the motorman made no attempt to have it remedied or to obtain another car although he passed the car barn several times after he discovered the defective condition of the brake, indicates negligence on the part of the motorman available to a passenger on the car subsequently suffering injury from such defect.

TRESPASS ON THE CASE for negligence. Heard on exceptions of plaintiff after nonsuit in Superior Court, and exceptions sustained.

DUBOIS, J. At the trial in the Superior Court, with a jury, it appeared that the plaintiff was employed by the defendant as a flagman, at Baker's crossing, under a contract to receive for his services in that capacity each week the sum of eight dollars and fourteen transportation tickets, good on the defendant's road. At the time of the accident he was riding in a car of the defendant, having finished his work, having put out the lights at the crossing, and having left the same and his flag, for the night, to go to Lakewood, his home. In a short time after he had entered the car it overtook and collided with the defendant's freight train, and in the collision the plaintiff suffered injury. There was evidence tending to prove that the collision was caused either by the negligence of the crew of the freight train, which had been stopped on the tracks around a curve and just ahead of the car upon which the plaintiff was riding, in not giving some warning signal that it was so stopped, or by the negligence of the motorman of the car carrying the plaintiff, or through a defective brake on that car. At the conclusion of the testimony for the plaintiff he was nonsuited by the court, upon the ground that he was a fellow-servant of the defendant with the one whose negligence caused his injury; and also, that the evidence regarding the defective brake was insufficient to charge the defendant with negligence.

A motion for a new trial, on the ground that the decision was against the law and the evidence, was denied; and the case is' now before this court upon the plaintiff's bill of exceptions, which raises the following questions:

1. Was the plaintiff a passenger or a fellow-servant?
2. Has the plaintiff made out a *prima facie* case of negligence?
3. Was the plaintiff, as a matter of law, guilty of contributory negligence?

4.  Was the evidence that the brake did not work, sufficient in itself to carry the case to the jury?

(1)  "The general rule is that every one on the passenger trains of a railroad company and there for the purpose of carriage with the consent, express or implied, of the company, is presumptively a passenger." Elliot Railroads, Sec. 1578. "As to whether an employee riding on a train is a passenger there is some conflict, but the rule seems to be that if he is being carried to and from his working place he is not a passenger, but if he is carried for his own convenience or business he is a passenger." *Ibid.* But the same author in the same section also states: "Persons who pay a consideration for passage no matter in what form are generally regarded as passengers."

In the case at bar the plaintiff earned fourteen tickets as well as eight dollars per week, and the fact that the tickets were purchased by work instead of cash is unimportant. The fact that they were bought, and not given to him, is important, because such a ticket paid for his passage home in the car in which he was riding at the time of the collision; and the fact that his passage was so paid after his day's work was fully completed made him a passenger after his employment had ceased for that day. He had left Baker's crossing and the flag and lights and other instruments with which he had guarded it, and there was no way in which, during his ride to Lakewood, he could continue his employment of flagman at the crossing they had left; he could not take it or its responsibilities with him, nor was there any way in which he could render service there while he was travelling away from it.

There are two conspicuous features noticeable in the plaintiff's case: His place of labor was fixed; and his transportation was earned. The distinction between cases of gratuitous carriage and those in which transportation has been paid for in any manner has been clearly recognized, with the result that generally the persons carried in the latter have been held to be passengers; while those transported in the former have not. As was said by Sterrett, J., in *McNulty* v. *Penna. R. Co.*, 182 Penn. St. 479, at p. 483: "In the case at bar, the transportation from and to his home to which the deceased, McNulty,

was entitled was not in any sense a service or connected with any service that he was rendering to the defendant company, but it was a service which the latter by the terms of its contract was required to render to him. He was under no obligation to ride on the cars, but there was an obligation on the part of the company to afford him an opportunity of doing so, if he saw fit to avail himself of it; and when he exercised the right to which he was thus entitled, and entered the car for the sole purpose of being transported to Bristol, he was a passenger in the full sense of the word, and not an employee of the defendant. Before he did so his day's service to the company was fully completed, and he had earned the $1.20, together with the right of transportation to Bristol." This case sustains the case of *O'Donnell* v. *Railroad Co.*, 59 Pa. 239, in which the court says: " The work of the plaintiff was wholly at the bridge; . . at the time of the accident he had finished his day's work, and was ten or twelve miles from the bridge on his way home. Under these circumstances the court below instructed the jury that the plaintiff was traveling as a passenger, and not in the capacity of a servant. . . . He was not hired to pursue his business on the train, but was carried in consideration of a reduction in the price of his wages. When his day's work was performed he was no longer in the service of the company, but was free to go or stay, and when he travelled in effect paid his fare out of his wages." This case was criticized in *Vick* v. *N. Y. C. & H. R. R. Co.* 95 N. Y. 267, as follows: " Of a contrary import is the case of *O'Donnell* v. *A. V. R. R. Co.* (59 Penn. St. 239), which is in conflict with the rule which obtains in this State and is not sound law." But referring to these decisions, Labatt, Master and Servant, Sec. 624, e, Vol. 2, pp. 1833, 1834, comments as follows: " The differentiating factors relied on by the court" in the O'Donnell case " were that the deduction from his wages made him a paying passenger; that his duties had been completed before he boarded the train; and that he was not carried merely for the convenience of his employers and without any contract of carriage. This ruling embodies, as the present writer ventures to think, a doctrine which is more in harmony with the common-law con-

ception of the effects of the existence or absence of a specific consideration for the transportation than a New York case" (*Vick* v. *R. R. Co., supra*) "in which substantially the same facts were presented, and in which the Pennsylvania doctrine was expressly disapproved. The hypothesis that a servant who submits to a reduction of his wages in consideration of being carried acquires no additional rights, as compared with a servant whose right to be carried can not be put higher than a mere 'permissive privilege' seems to be quite anomalous. Whether in any particular instance a special bargain has been made which exempts the servant from the operation of the doctrine of common employment must be determined with reference to the terms of the contract."

In the case of *Dickinson* v. *West End Railway*, 177 Mass. 365, at p. 368, the court used the following language: "At the time of the accident he did not stand in the relation of a servant to the defendant. His time was his own, and he owed the defendant no duties until the time arrived for resuming his work. It was no part of his duty to the defendant, as a servant, to take the car on which he was riding and go to a particular place for his dinner. He might go where he pleased and when he pleased during the interval before coming back to his work. This case is different in this particular from cases in which the plaintiff was riding in the line of his duty in the course of his employment. . . . His rights were the same as if, after finishing his day's service, he had taken a car in the evening to visit a friend, or to do any business of his own. The fact that he had been in the defendant's service during the day would not make him a fellow-servant with the motorman."

It has even been said that: "The weight of authority and of sound policy, we think, is that where a servant performs all his work at a fixed place, and the master, either by custom or as a gratuity, carries him to and from his work, the servant doing no service for the master on the train, he is to be treated as a passenger." *Transit Co.* v. *Venable*, 105 Tenn. 460, at p. 469, and cases cited.

The defendant argues that the cases of *Ionnone* v. *N. Y., N. H. & H. R. R. Co.* 21 R. I. 452, and *Shannon* v. *U. R. R.*

*Co.,* 27 R. I. 475, control the case at bar. The difference between gratuitous carriage and transportation which has been earned or paid for was clearly pointed out in the Ionnone case, which was one of gratuitous carriage and was decided upon that very ground; while the Shannon case was one in which the plaintiff was injured while being carried from place to place in the course of his employment for the convenience of the employer; they are, therefore, clearly distinguishable from the present case.

The plaintiff offered testimony that should have been submitted to the jury for consideration under proper instructions. The court, therefore, erred in granting the defendant's motion for a nonsuit. The plaintiff did make out a *prima facie* case of negligence, by proof that he was a passenger in a car of the defendant which collided with another of its cars in the circumstances in which the collision occurred, as previously narrated. There was nothing in the testimony presented that indicated that the plaintiff was guilty of contributory negligence.

(2)    By the fourth question we understand the plaintiff to inquire, assuming all his other contentions to have been decided adversely, whether he still has a case to go to the jury on the evidence that the brake did not work.

In view of the conclusion we have already reached, it becomes unnecessary to answer this question. Nevertheless it is proper to say that the evidence of an inefficient brake is coupled with evidence that the motorman made no attempt to have it remedied, or to obtain another car, although he passed the car barn several times after he discovered the defective condition of the brake. This would indicate negligence on the part of the motorman, a fact available to the plaintiff if a passenger, but not if a fellow-servant.

The plaintiff's exceptions are therefore sustained, and the case is remanded to the Superior Court for a new trial.

*Lewis A. Waterman,* for plaintiff.

*Henry W. Hayes,* for defendant.