## 298.  LUCAS *v.* SOUTHERN RAILWAY COMPANY.

The duty of inspecting the condition of cars used in its trains is one of the absolute duties of a railway company, as a master, in relation to its employees. This applies to cars received from connecting carriers as well as to its own cars.

(a) A part of this duty is to see that the cars are not unsafely loaded.

(b) As to cars loaded by connecting carriers the master is allowed a reasonable time after receiving such cars to make an inspection, before negligence can be imputed to him.

(c) This duty of inspection may be performed through employees hired for that purpose, the master being responsible for the negligence of such inspector in the performance of the duty.

(d) Where the duty of inspection has been delegated to an employee, such employee, generally speaking, assumes the risk of all dangers incident to making the inspection.

(e) If a master has "set a trap" for his inspector by sending him to inspect, or knowingly permitting him to inspect a car which the master has himself improperly and unsafely loaded in another department of the work, whereby the inspector encounters a danger not reasonably to be anticipated by him, the master will be liable to him for injuries received in attempting to make the inspection in the ordinary manner.

(f) If a dangerously-loaded car be received from a connecting carrier, the master is not liable for injuries received by his inspector in attempting to inspect such car, unless the master have actual knowledge of its dangerous condition and fail to warn the inspector of such dangers.

(g) The fundamental proposition involved is that the master is under the duty of inspecting the cars and of ascertaining dangers in them; the inspector has the same duty; presumptively the knowledge, actual and constructive, of each is equal; and where the servant knows of a danger or has equal means with his master of ascertaining it, he assumes it as a risk of the employment.

(h) The petition in the present case was properly dismissed upon demurrer.

Action for damages, from city court of Richmond county—Judge Eve. September 15, 1906.

Argued April 30,—Decided May 16, 1907.

*A. L. Franklin, Austin Branch,* for plaintiff.

*Joseph B. & Bryan Cumming,* for defendant.

POWELL, J.   The petition sets out that the plaintiff was employed by the defendant company as a car inspector, and it was his duty to make a thorough examination of cars in trains which were ready to go out on the road, and to remedy any slight irregularity which he might discover.   On the day in question he was engaged in inspecting a train of cars that was made up and ready to go out on the road.   He noticed that the "heel" on one of the car doors of the train was loose and out of gear, and he tried to put the heel of the door back in place, to make it secure before the train should go out.   As petitioner attempted to push the door or door-heel back in place, two bales of cotton burst out, tearing off the door, and knocking the plaintiff to the ground, whereby certain definitely-enumerated injuries were inflicted upon him.   It is alleged that the car was negligently packed with a larger number of bales of cotton than could safely be transported therein, and the crowding of the cotton and the defective condition of the door caused the door to break off as above described.   The demurrer was both general and special.   The special demurrer pointed out the fact that the petition failed to allege whether the

car had been loaded by the defendant or by some other person or corporation, and also that it failed to set out whether the condition of the loading was known to the defendant or could, in the exercise of ordinary care, have been known by the defendant.

We think the action was properly dismissed. While it is well recognized in this State that the duty of inspection for the purpose of discovering abnormal dangers and of warning the servants of them is one of the absolute duties of the master, still the law recognizes that in many cases this duty must be performed, not by the master personally, but through employees hired for that very purpose. A railway company, before sending out cars in its trains owes to those who are to handle the trains the duty of causing these cars to be inspected with the view of ascertaining whether they are safely constructed and are in proper repair, and are so loaded as not to be dangerous. This duty relates not only to its own cars, but also to those received from connecting carriers. However, the servant can not recover for injuries caused by a defective foreign car, unless he offers some evidence tending to show that the defect might have been discovered by the master, through the exercise of ordinary care. Labatt's M. & S. §174. In the ordinary practice of railway companies this duty of inspecting cars, both local and foreign, is necessarily performed through inspectors. Where one contracts to undertake this duty of inspection, he necessarily knows, that there would be no need for his services if dangers were not probable; that he himself is employed for the very purpose of ferreting out these dangers, both latent and patent; and that if he properly discharges his duty he will be the first person to know of these dangers. He therefore usually has equal means with the master of knowing of every danger incident to his duties. Consequently if, in making the inspection, he is injured by a latent danger, he has but encountered the risk which he assumed as part of his employment, and the master is not liable.

Of course the master must not set a trap for one of his inspectors; must not send him into a danger of which the master has actual knowledge, without giving him warning thereof. This would be an independent breach of duty. If a railway company should cause a car to be dangerously loaded in one of its departments, and, with actual knowledge of the dangerous condition

and its liability to hurt one who should attempt to inspect it, should send it into another department, and there permit an inspector, in the ordinary course of his employment, to put himself in range of this danger, without warning, that would probably be actionable; but if the master's dereliction is not wanton or wilful but consists merely in a negligent failure to do that which the particular servant in question is hired to do, that is to say to inspect the cars, then the servant can not recover; and this would be the case where the railway company received a car from a connecting carrier, which, though dangerously loaded, the master had not yet discovered to be so.    In the case of *Dartmouth Spinning Co.* v. *Achord,* 84 *Ga.* 14, Chief Justice Bleckley, speaking of a similar case, said: "While it is the duty of the master to furnish his servant safe machinery for use, he is under no duty to furnish his machinist with safe machinery to be repaired, or to keep it safe whilst repairs are in progress.    Precisely because it is unsafe for use, repairs are often necessary.    The physician might as well insist on having a well patient to be treated and cured, as the machinist to have sound and safe machinery to be repaired.    The plaintiff was called to this machinery as infirm, not as whole.    An important part of his business was to diagnose the case and discover what was the matter.    If he failed in this branch of his profession, it was either his fault or his misfortune. So far as appears, no one knew more of the state and condition of the machinery at the time than he did; and the object of calling him in the room was, that he might ascertain the cause of the trouble and apply the remedy. . . The incompetency and inattention of the others gave him more to do in his vocation, somewhat as a sickly climate favors a physician's practice.    It is to the interest of those who use machinery for it always to be in good condition, but for it to fail often and get out of order is advantageous to the man whose business is to make repairs.    True it is, that the risk of concealed dangers incident to the work of making repairs is upon him; but as the skilled machinist is best competent to discover and avert such dangers, he is the proper man to incur the hazard."

We think the court properly sustained the demurrers, both general and special.    See Labatt M. & S. §§268, 269.

*Judgment affirmed.*