### 1095. SOUTHERN RAILWAY COMPANY *v.* WEST.

1. One who is employed by a railroad company in the work of building and repairing bridges, trestles, and depots, and is furnished with a car in which he and his associates live, and in which they are transported to places along the line of the road where their services are required, the custom being to attach the car to engines and trains of the railroad company and move it from one place to another in the progress of the work, is an employee of the railroad company, not only while he is engaged in the work of building and repairing bridges, trestles, and depots, but also while being so moved in the car from place to place in the work of his regular employment.

2. A petition brought to recover damages for personal injuries against a railroad company, wherein the facts set forth show liability arising from the relation of employer and employee, is sufficient to submit to the jury and to let in proof of the allegations going to establish such liability, although the plaintiff claims in the petition that he was a passenger when injured, and, as such, entitled to recover. The legal status of the plaintiff is shown by the facts alleged, and not by his conclusion from such facts.

Action for damages, from city court of Polk county—Judge Irwin. March 3, 1908.

Argued May 7,—Decided August 4, 1908.

*McDaniel, Alston & Black, Maddox, McCamy & Shumate,* for plaintiff in error.

*J. M. & H. J. McBride, John W. & G. E. Maddox,* contra.

HILL, C. J. West sued the Southern Railway Company to recover damages for personal injuries. The material portions of his petition are as follows: "(3) That on said 10th day of July, 1905, petitioner was employed and for sometime prior thereto had

been employed by defendant as a member of what was known as the 'bridge gang,' and as such was engaged in the work of building and repairing bridges, trestles, and depots on its said system of railroads, both in Alabama and in Georgia. (4) That as such employee, petitioner, together with the other members of said bridge gang, was required by defendant to cook, eat, and live in some old passenger coaches furnished them for that purpose by said defendant, which said coaches were moved by the engines and trains of defendant on its said lines of railroad as it became necessary for said bridge gang to move from one place of work to another; and that while going from one place of work to another, it was usual and customary for the members of said bridge gang to be transported by defendant in said cars, no other means being provided them. (5) That your petitioner, along with said bridge gang, had been for some time prior thereto at work painting a bridge on defendant's line of railroad, about two miles east of Weems, in Jefferson county, Alabama; the work on said bridge being completed on said 10th day of July, 1905. (6) That in the evening of said 10th day of July, 1905, when the work on said bridge had been completed, petitioner, together with the others of said bridge gang, in accordance with the orders and directions of the foreman of said bridge gang, went aboard said cars, and the same were attached to a freight train, and defendant undertook to transport the same into Birmingham, Ala., a distance of about twenty miles. (7) That while traveling on said train, petitioner was not engaged in any work, had nothing whatever to do with the running or operation of said train, and had no control over any of those engaged in the running or operation of said train; but he was, in effect, a passenger on said train, and defendant owed him the duty of extraordinary diligence for his safety. (8) That the coach so furnished by defendant, as aforesaid, and in which petitioner was riding, the same being called the sleeping car, was an old passenger coach, the wood and wooden draft timbers of which were decayed. The wood in the drawhead used to couple said coach on to others was old, decayed, and not sufficiently strong to make it safe to couple and use said coach in running on a railroad. The iron key, and the iron pin in said key, used in holding said drawhead in and to said draft timbers, was old, worn, and defective, and by reason thereof unsafe to use in coupling and

43

carrying said coach, with petitioner therein, on said railroad. All of said defects were unknown to petitioner, but were known or could have been known to defendant, in the exercise of extraordinary diligence due to him as a passenger on said car. (9) That while said coaches were being carried on defendant's said line of railroad, and at a point about seven miles from Birmingham, they were suddenly, violently, and unnecessarily jerked forward, then and there jerking and breaking and pulling said pin out of said key, tearing and breaking from their places the said pin and key and said draft timbers in the front end of the coach in which petitioner was riding, and jerking and breaking said drawhead and said pin and key by which it was fastened to said draft timbers of said coach, thereby causing said coach to become uncoupled and detached from the car immediately in front of it. The said drawhead immediately dropped from its place to the ground and ties on said track, one end or part of said drawhead standing on the ties, and the other end up to and against the iron axle of the front trucks of said coach, thereby forcing the front end and truck of said coach up and off the track. (10) That at the time said coach was so derailed, said train was being run at a high and dangerous rate of speed, the same being about thirty miles per hour; and, after said coach was so derailed, it continued to run on the ground and on the cross-ties along said track for a distance of more than one hundred feet; that after it was derailed and before it stopped, it was running, jumping, and violently tossing, leaning and careening from one side to the other on and across the cross-ties and on the ground, and, as petitioner believed, was in constant and immediate danger of being turned over; that while said coach was thus tossing and careening, your petitioner, with the others in said coach, including the foreman of said bridge gang, were caused thereby to become greatly excited, agitated, and alarmed for his safety, and while so, believing that his life was in danger, without time for reflection or deliberation, in company with said foreman and other persons in said coach, he jumped from said coach to the ground." The injuries received by the petitioner are fully described in the petition.

The defendant demurred to the petition and moved the court to dismiss it, because "the plaintiff sues as a passenger on the defendant's train, and seeks to hold it to a degree of care required of

a common carrier in its relation to a passenger, while the facts alleged by him show that he was not a passenger, but was an employee of the defendant, engaged in his duties as such, and was not entitled to the same degree of care as a passenger, and, being an employee, that he owed the defendant duties as an employee which are not owed by a passenger." The court overruled the demurrer, and the defendant assigns error on this judgment. Two questions are presented to this court for determination: (1) Do the facts as set forth in the petition constitute the plaintiff a passenger? (2) Are the allegations of the petition sufficient to set forth a good cause of action by the servant against the master for the master's own negligence?

In determining the legal status of the plaintiff at the time he received the injuries complained of, the question must be decided according to the general law, and not under any statutory law of this State, where the suit was brought, or of the State of Alabama, where the injury occurred. No statute of the State of Alabama is pleaded as a basis of recovery, and, of course, no statute of this State would be applicable to the case. We think that the facts set forth in the declaration make a good cause of action, under the common law, to recover damages for personal injuries. If these facts show that the plaintiff was at the time a passenger, he was entitled, under the principles of the common law, to extraordinary care and diligence by the defendant. If the facts show that he was not a passenger, but was a servant, and that his injuries were inflicted by the negligence of the master, without any contributory negligence on his part, he would be entitled to ordinary diligence on the part of the master. In our opinion, under the facts as set forth by the plaintiff, he did not occupy the relation of a passenger to the defendant when he received his injuries.

The status of employees of railroad companies, not connected with the running of the trains, and while being transported upon the trains of the companies, has frequently been before the courts. There is some conflict as to whether an employee carried to and from his work on a car, while being so carried, becomes a passenger, or remains as an employee. Elliott, in his work on Railroads, states that "the weight of authority, however, as well as the better reason, is clearly to the effect that where he is so carried he is not a passenger, but is, ordinarily, to be considered as an employee and

a fellow-servant of the employees upon the car transporting him. But it may be otherwise if he is being carried in pursuance of his own "business." He cites numerous authorities to sustain this dictum. 3 Elliott on Railroads, § 1303*a,* and decisions cited in the note. Judge Lurton of the United States circuit court, in the case of Louisville and Nashville R. Co. *v*. Stuber, 54 L. R. A. 696 (108 Fed. 936, 48 C. C. A. 149), says: "The rule is now well settled that railway employees, while being carried, as part of their contract of service, to and from their place of work, are fellow-servants, and not passengers." In support of this general statement we cite several cases very much in point. In Gillshannon *v*. Railroad Corporation, 10 Cush. 228, it is held that laborers being carried to and from their work upon a gravel train are not passengers, but fellow-servants of those operating the train. In Seaver *v*. Railroad Co., 14 Gray, 466, a carpenter whose business it was to repair bridges and fences along the line of the railroad was injured while being carried from his place of work, and he was held to be a fellow-servant, and not a passenger. In Ryan *v*. Railroad Co., 23 Penn. St. 384, a laborer on a gravel train was injured through the negligence of the conductor or engineer, while being carried from his residence to his place of work; held, that there could be no recovery. In McQueen *v*. Railroad Co., 30 Kan. 689, a bridge painter, while being transported over the road to discharge his duties, was held not to be a passenger. In Railroad Co. *v*. Smith, 67 Fed. 524 (31 L. R. A. 321), it was held that a civil engineer charged with the duty of looking after the maintenance of bridges, trestles, and water tanks, was not a passenger, but was traveling over the road in discharge of his duties. And in Tomlinson *v*. Railroad Co., 97 Fed. 252, in an opinion by the circuit court of appeals for the eighth circuit, it was held that a bridge builder and repairer, whose duties called him to various places on the line of the railroad company employing him, was not a passenger when being carried over the road to the place of work, but a fellow-servant with those operating the train to which his car was attached. There are many cases to the same effect, all based upon the principles of the general law applicable to the point in question. The conclusion, supported by the great weight of authorities, is comprehensively expressed by Beale and Wyman as follows: "If the carriage is directly in connection with his work, he is really, while being car-

ried, engaged in his employment, and his relation to the carrier is that of servant and certainly not that of a passenger; as where a workman on a construction or gravel train is taken from place to place on the road, as his services are needed. If he is not actually working at his employment, but is being carried to and from the place of employment, by agreement of the company, as an assistance to his work, he would seem equally to be engaged in his employment, and not to be a passenger. If, however, he receives as a gratuity or in part compensation for his services the right to travel free in the conveyance of the carrier upon his own business, then, in so traveling, he is to be regarded as in all respects a passenger." Railroad Rate Regulation, §153.

Applying to the facts in the petition the test here laid down, the conclusion is irresistible that the plaintiff, at the time he was injured, was not a passenger. He was not traveling upon his own business, but was traveling in the car of the railway company, in direct connection with his ordinary duty as an employee. He had finished his work on the bridge of the company at one point of the railroad, and, following the orders and directions of the foreman of the bridge gang, went aboard the company's cars to be transported to Birmingham, Alabama, a distance of twenty miles, presumably for the purpose of continuing his work and employment for the company. He alleges that the bridge gang, of which he was a member, were required by the railroad company to live in some old passenger coaches, and to be moved, in the execution of their special employment, by the railroad from one place of work to another. It would be illogical to claim that while engaged at the places of work they would be employees of the company, but when transported between such places they would cease to be employees and become passengers. It was the plaintiff's duty to travel in the cars provided for that purpose by the company, to those places along the line of the company's railroad where his services were required. While thus traveling he continued in the service of the company, and was doubtless paid for his time, and we can perceive no substantial reason for holding that the relation between himself and the master and his fellow-servants was broken while he was being transported from place to place of his work, and that it was re-established when he actually resumed work.

The case of *Carswell* v. *Macon, Dublin and Savannah R. Co.,* 118 *Ga.* 826 (45 S. E. 695), relied upon as establishing the contention that the plaintiff was "in effect a passenger and entitled to extraordinary diligence," is not in conflict with the rule above announced. The *Carswell* case is based upon the construction of a statute of this State (Civil Code, §2297), which is as follows: "Railroad companies are common carriers, and liable as such. As such companies necessarily have many employees who can not possibly control those who should exercise care and diligence in the running of trains, such companies shall be liable to such employees as to passengers for injuries arising from the want of such care and diligence." This statute has no extra-territorial effect, and can not apply to an injury occurring in the State of Alabama. This statute seems to make an exception to the general rule of law in favor of employees who are being injured while being transported, and who have no control of the train upon which they are riding when injured. If, therefore, the facts alleged by the plaintiff limited his right to recover, to his statement that he was a passenger at the time that he was injured, and was therefore entitled to extraordinary diligence on the part of the railroad company, we would be compelled to hold that the court erred in overruling the demurrer and in not dismissing the petition. But we think that the case made by the plaintiff in his petition should not be restricted to his conclusion that he was in effect a passenger, and, as such, entitled to extraordinary diligence; but the facts set out which show that he was injured as an employee by the negligence of the master, and not by his own negligence contributing thereto, or the negligence of his fellow-servants, should also be considered. It can not make any material difference that he is mistaken in designating himself as a passenger, if, notwithstanding such designation, the facts set out in his petition determine this issue, and show that he would be entitled to recover as an employee.

The petition alleges that the railroad company was negligent in that it furnished a defective car in which to transport the plaintiff to his place of work. The defects in the car are specified. It was the duty of the railway company to furnish a safe car for the plaintiff to ride in, and the plaintiff was under no duty to inspect the car to see that it was in a safe condition. This was the duty of the company. *Dennis* v. *Schofield's Sons Co.,* 1 *Ga. App.* 489

(57 S. E. 925); *Southern Cotton-Oil Co.* v. *Gladman,* 1 *Ga. App.* 263 (58 S. E. 249); *Southern States Cement Co.,* v. *Helms,* 2 *Ga. App.* 314 (58 S. E. 524). And this would be true whether the plaintiff should be regarded as a passenger or as an employee. The duty of inspecting the condition of cars used in its trains is one of the absolute duties of the railroad company as a master, in relation to its employees. *Lucas* v. *Southern Ry. Co.,* 1 *Ga. App.* 810 (57 S. E. 1041); *Moore* v. *Dublin Cotton Mills,* 127 *Ga.* 610 (56 S. E. 839, 10 L. R. A. (N. S.) 772). It appears from the petition that the car in which the plaintiff was riding was furnished by the railroad company not only as a place in which the plaintiff and other employees were to live, but in which they were to ride when being transported by the company from place to place. It was therefore the duty of the railroad company to see that this car was in a safe condition, not only for the employees to live in, but also for them to be transported in; and the allegation is that this duty was not discharged by the railroad company, and that the car was in an unsafe condition to be used as a means of transportation, and that this defective condition was unknown to the petitioner, but was known, or could have been known, to the defendant. It being well settled that the railroad company owed to the plaintiff the absolute non-assignable duty of furnishing him a safe car in which to ride, if he is treated as an employee, and if the facts alleged which show that this duty was not fully discharged by the railroad company are proved, we think that he would be entitled to recover, notwithstanding the error of his conclusion that he was a passenger when he was injured. It is true that the allegations of the petition show that the plaintiff's injury was caused by the concurring negligence of the railroad company in furnishing an unsafe and defective car for transportation, and in the negligence of the company's servants in handling the train or the engine which was pulling the car; but it is well settled that if the master's negligence concurred with that of a fellow-servant in producing the injury, the master would be liable as if he only was at fault, in other words, the fellow-servant doctrine would not apply in such a case. *Cheeney* v. *Ocean Steamship Co.,* 92 *Ga.* 726 (19 S. E. 33, 44 Am. St. R. 113), and cases cited. "If the negligence of the master contributes to the injury of the

servant, it must necessarily become an immediate cause of the injury, and it is no defense that another is likewise guilty of wrong." McKinney on Fellow Servants, §16.

To conclude, we think that the facts set out in this petition make a case of liability; not the liability of a railroad company to a passenger, but the liability of a master to a servant; and the right of the plaintiff to recover, if he proves these facts, can not be legally affected by his erroneous conclusion that he occupied the relation of a passenger. For this reason we think the judgment overruling the demurrer should be affirmed.

*Judgment affirmed.*