## PITTSBURGH VALVE FOUNDRY & CONSTRUCTION CO. v. GALLAGHER.

Circuit Court of Appeals, Sixth Circuit.
May 8, 1929.

No. 5145.

J. R. Kistner and James P. Wood, both of Cleveland, Ohio (Tolles, Hogsett & Ginn, all of Cleveland, Ohio, on the brief), for appellant.

Charles Koonee, Jr., of Youngstown, Ohio, for appellee.

Before HICKS, MACK, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge. The appellant, defendant below and hereinafter referred to as defendant, was engaged in the installation of certain equipment at the plant of the Florida Light & Power Company at Dania, Fla. Prior to the time in question the defendant had been similarly engaged at Sanford, Fla. In order to assure proper performance of these contracts, a certain part of the labor organization was brought from Pittsburgh, where defendant's home office was located; the defendant agreeing to defray transportation expenses from Pittsburgh to Florida and to make allowance to the employee for living expenses in addition to the normal wages earned. The plaintiff below was one of the employees of the defendant so taken to Florida.

At the beginning of the Dania job it was found that no living facilities were available in the immediate neighborhood of the work and that plaintiff and others would be required to lodge at Ft. Lauderdale, Fla., about 10 miles distant. There is substantial evidence to support the finding of the jury that in view of this situation defendant entered into an express contract with plaintiff to provide transportation facilities between Ft. Lauderdale and the power plant under construction; that the hours of work for the men were from 7 o'clock in the morning until 5:30 o'clock in the evening, compensation upon an hourly basis commencing upon arrival at the plant and ceasing with departure from the plant; and that in performance of its contract with plaintiff, defendant entered into an agreement with one Anderson, also a laborer upon the job and the owner of his own automobile, to transport the plaintiff and other workmen from Ft. Lauderdale to the plant in the morning and from the plant to Ft. Lauderdale in the evening at an agreed compensation. For such transportation purposes two automobiles were thus provided. The compensation was paid by defendant directly to the operators of the automobiles. No bus lines, traction cars, or railroads were available to the employees for such journeys, and thus no choice of means of transportation was afforded them.

On November 15, 1926, plaintiff started to work from Ft. Lauderdale in the automobile operated by Anderson. Through the negligence of Anderson a collision occurred between his automobile and that of another user of the road, in which collision plaintiff was seriously injured. Plaintiff brought action against the defendant claiming damages for breach of the alleged contract to furnish "safe" transportation. Defendant answered denying that it had agreed to furnish plaintiff safe transportation at its cost and expense and that it had paid Anderson or any other person for transporting plaintiff. Defendant admitted the employment of plaintiff and the happening of the accident, but denied each and every other allegation in the petition contained.

At the conclusion of plaintiff's testimony the defendant moved for a directed verdict, which motion was renewed at the close of all the evidence. These motions were overruled and the cause submitted to the jury upon the issues whether a contract for transportation was in fact made between plaintiff and defendant and whether Anderson was employed by the defendant to furnish transportation pursuant to such contract, and if so whether

he was negligent in the operation of the automobile. The court charged the jury that if such contracts were made by defendant with plaintiff and Anderson the defendant would be charged with any lack of ordinary care on the part of Anderson, but that the burden was upon the plaintiff to prove the making of both contracts and the failure of Anderson to use ordinary care. The trial resulted in a verdict and judgment for plaintiff.

Before the jury retired certain exceptions to the charge, general in their nature, were taken by defendant, but no specific requests for instructions were made; the exceptions most pertinent to the argument now presented being that "the jury had not been instructed as to the relationship of master and servant" and the exception "especially to that part of the charge defining the duty of the defendant to use ordinary care to transport plaintiff, rather than the duty to use ordinary care in the selection of its agents." The overruling of defendant's motion at the conclusion of plaintiff's evidence forms the first assignment of error. The overruling of such motion at the conclusion of all evidence is not assigned as error at all, although exception was noted at the trial.

It is therefore difficult to determine precisely what questions of error are raised by this record in which counsel have been so careless in properly preserving questions of alleged error for presentation to the appellate court. Counsel for appellant argues that the evidence, in its aspect most favorable to plaintiff, unequivocally disclosed that Anderson, the driver of the automobile, was an independent contractor for whose negligence the defendant was not responsible or, if this position be not well taken, that Anderson must as a matter of law be deemed a fellow servant of the plaintiff for whose negligence defendant is likewise not responsible, and that the court therefore erred in overruling the motions for a directed verdict. Waiving the irregularities in the preservation of the questions thus presented, we may consider these issues as if properly raised or as if raised by the combined exceptions to the charge and motions for a directed verdict.

█ Doubtless, having undertaken a contractual obligation to provide transportation, the defendant might have performed this duty through an independent contractor for whose negligence it would in no way have been responsible. Cf. Neelon v. Hirsh & Renner, Inc., 255 Mass. 285, 151 N. E. 302; Gall v. Detroit Journal Co., 191 Mich. 405, 158 N. W. 36, and an exhaustive annotation

of the latter case in 19 A. L. R. 1168. Whether or not the relationship was that of master and servant or of employer and independent contractor is to be determined in each case from direct and circumstantial evidence involving the nature and extent of the work to be done; whether compensation is payable upon performance of specified work, or paid as in the nature of wages, even though on a "piecework" basis; whether the details of when, how, and by whom the actual work is to be done are left to the alleged independent contractor, or are controlled by the employer as a part of the contract itself; whether the employer is bound until the completion of the entire work in contemplation, or is at liberty to discharge those doing the work at any time and to employ others; whether the alleged independent contractor is in fact engaged in any distinct business or occupation (such as building, transportation by rail, street car, or bus, general contracting, etc.) in the field in which he contracts; and similar considerations. If there be substantial evidence tending to negative the independent nature of the contract and to establish the personal employment of Anderson by defendant to perform for and on behalf of defendant a contract obligation owing by defendant directly to plaintiff, the court did not err in overruling the motion for a directed verdict.

We are of the opinion that the record contains such substantial evidence. Anderson was not engaged in the collateral business of transportation. The contract must be taken to have been made directly between Anderson (and the driver of the other automobile) and the defendant. Such contract contemplated the rendering of a service by Anderson personally, in the performance of a contract obligation of defendant, Anderson supplying his own automobile but the use of such automobile being taken into consideration in fixing the compensation. The employment was upon a weekly basis for a service rendered, and defendant was free at any time to terminate the employment. The nature of the work was not such as is usually let by independent contract, but rather that which is generally performed by a servant or employee, whether the automobile be the property of the employer or of the servant. Anderson was chosen from among those already employed by defendant and not from those otherwise available for furnishing transportation. The contract was to furnish transportation, not to pay for such transportation as plaintiff should procure. The compensation for this service was paid in whole by the defendant, and Anderson was presumably subject to the control and direction of defendant whether this power was exercised or not. Under these circumstances, we are of the opinion that the evidence establishes the relationship of master and servant as between Anderson and the defendant and negatives the relationship of independent contractor. The court did not err in refusing to direct a verdict for defendant upon this ground.

The contention that the court erred in refusing to direct a verdict upon the ground that Anderson was a fellow servant of the plaintiff presents a question of greater nicety. The defense of fellow servant was not pleaded, but the action being in contract, it is doubtful whether such defense could have been properly asserted. We think, however, that the doctrine of fellow servant, applicable to tort actions, has direct relevance in the determination of the extent of the implied contract obligation.

The petition alleges that the defendant contracted to furnish plaintiff with "safe transportation." The evidence disclosed a contract to furnish "transportation." The court in effect held that such contract contained an implied obligation to exercise ordinary care. Whether the action be in tort or in contract, we are of the opinion that the measure of duty of defendant to plaintiff was the same. In tort the duty is that prescribed by the common law. In contract such duty is that imposed by the express and implied terms of the contract. It is often said that every contract of employment contains an implied provision that the servant assumes the risk of injury through the negligence of fellow servants. This is but another, though perhaps inartistic, method of expressing the doctrine that the duty of the master is the same whether the action be founded upon contract or in tort. The defendant does deny responsibility for the negligence of Anderson and did ask that the jury be instructed, in effect, that defendant was responsible only for negligence in the selection of its agents. This request would seem applicable both to the defense of independent contractor and the defense of fellow servant. The means of transportation was furnished to plaintiff and the letter of the express contract was fulfilled. It was the implied provision which was breached, and no provision should be implied which would vary or increase the obligation of the master as imposed by the law of master and servant. If therefore the defense of fellow servant would bar recovery in a tort action, it must likewise bar recovery in an action on the contract by limiting the

extent of the implied contractual obligation. The agreement to furnish transportation was founded upon a valid· consideration, in that it was made in consideration of plaintiff accepting employment at Dania. It must be kept in mind that the place of labor was fixed ,and that this is not a case where the plaintiff was being transported from one place of labor to another in the course of his employment or from a general headquarters or starting place of employment to a specific place of work, such places of work varying from time to time. The plaintiff was a steamfitter. His hours of service were definitely fixed. Before reaching the plant in the morning and after leaving it at night he was neither in the pay of defendant nor charged with or rendering any service to defendant. He was his own master, being carried under contract and for a valuable consideration between his· residence and his place of work.

Under these circumstances the case does not seem to fall within the doctrine of Northern Pac. R. Co. v. Peterson, 162 U. S. 346, 16 S. Ct. 843, 40 L. Ed. 994, and Martin v. A., T. & S. F. R. Co., 166 U. S. 399, 17 S. Ct. 603, 41 L. Ed. 1051, in both of which the plaintiff was being transported by hand car upon the defendant's line of railroad when injured by the negligence of other employees who were held to be fellow servants. There the plaintiffs were on the defendants' lines, acting in the course of their employment. The present case is more closely analogous to that of Fletcher v. Baltimore & Potomac R. Co., 168 U. S. 135, 138, 18 S. Ct. 35, 42 L. Ed. 411, or to those cases in which the contract for carriage was held to be collateral to and independent of the contract for service, and the employees when using the master's road, especially in the cases of a street railway, were held to be passengers and not fellow servants of those other employees engaged in operation of the train or traction car. See Headline v. Great Northern Ry. Co., 113 Minn. 74, 128 N. W. 1115; Carswell v. Macon, D. & S. R. Co., 118 Ga. 826, 45 S. E. 695; Hebert v. Portland R. Co., 103 Me. 315, 69 A. 266, 125 Am. St. Rep. 297, 13 Ann. Cas. 886; Roberson v. Greenleaf Johnson Lumber Co., 154 N. C. 328, 70 S. E. 630; Enos v. Rhode Island Sub. Ry. Co., 28 R. I. 291, 67 A. 5, 12 L. R. A. (N. S.) 244; Transit Co. v. Venable, 105 Tenn. 460, 58 S. W. 861; Harris, Adm'r, v. City, etc., R. R. Co., 69 W. Va. 65, 70 S. E. 859, 50 L. R. A. (N. S.) 706, Ann. Cas. 1912D, 59; Peterson v. Seattle Traction Co., 23 Wash. 615, 63 P. 539, 65 P. 543, 53 L. R. A. 586;

McNulty v. Penna. R. R. Co., 182 Pa. 479, 38 A. 524, 38 L. R. A. 376, 61 Am. St. Rep. 721. And cf. Grand Trunk R. Co. v. Stevens, 95 U. S. 655, 658, 659, 24 L. Ed. 535; Whitney v. N. Y., N. H. & H. R. Co., 102 F. 850 (C. C. A. 1), 50 L. R. A. 615.

The case of O'Bierne v. Stafford, 87 Conn. 354, 87 A. 743, 46 L. R. A. (N. S.) 1183, is almost precisely in point. In that case the master agreed when employing plaintiff as a domestic servant that he would take her to church in his .automobile on Sunday. The automobile was driven by a·chauffeur through whose negligence plaintiff was injured. It was held that plaintiff and the chauffeur were not fellow servants upon such journey. This case illustrates the difference, we think, between those cases in which the transportation forms an integral part of the service to the employer, either by contract or custom, for the convenience of the employer or for the mutual convenience of employer and employee, and upon the line of railroad of the employer, where the employee is either servant or licensee at the time, and where in a proper sense the carriage cannot be said to be disconnected from the employment but rather connected therewith, contemplated thereby, and incident thereto; and those cases in which the carriage is made necessary by extraneous and collateral circumstances not naturally incident to or ordinarily arising in the course of such employment, is rendered for the convenience of the employee only in enabling him to secure reasonable living accommodations, and is under a contract independent of and separate from that for the other service to be rendered. In the first class there is but a single contract of employment. In the second class there are in effect two separate, though contemporaneous, contracts, each supported by a different consideration. Such distinction was in no way suggested in the court below. For an interesting and exhaustive review of the authorities on both sides of this question, in a case illustrative of the first class above mentioned, see the opinion of Judge Knappen in Dayton Coal & Iron Co. v. Dodd, 188 F. 597, 37 L. R. A. (N. S.) 456 (C. C. A. 6). To the same effect also, see St. Bernard Cypress Co. v. Johnson, 222 F. 246 (C. C. A. 5); San Pedro, L. A. & S. L. R. Co. v. Davide, 210 F. 870 (C. C. A. 9); Brooks v. Central Sainte Jeanne, 228 U. S. 688, .33 S. Ct. 700, 57 L. Ed. 1025.

In view of the narrowness of the issue presented and upon the particular facts of the present case, and without departing from the general doctrine laid down by this court in Dayton Coal & Iron Co. v. Dodd, supra,

we are of the opinion that the court did not err in overruling the motion for a directed verdict, and the judgment must therefore be affirmed.